THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JUAN CABALLERO, Defendant.

City Magistrate's Court of New York, Borough of Manhattan, Felony Court, December 21, 1948.

*Frank S. Hogan, District Attorney* (*Chester E. Kleinberg* of counsel), for plaintiff.

*John Cardone* for defendant.

CANUDO, M. On November 17, 1948, the defendant was arrested on the complaint that, while riding in a bus, " he did unnecessarily push and jostle against a male passenger and did place his right hand inside the jacket and in the proximity of the man's inside jacket pocket." [Penal Law, § 722, subd. 6.]

When the case was called in Part I of Felony Court on November 26th, after a first adjournment had been granted, the defendant appeared with an attorney who indicated he was ready for trial. Immediately thereafter, the defendant and his attorney engaged in a conversation in a foreign tongue, and the attorney then stated: " Defendant has just told me that he wants an adjournment until next week." This adjournment was denied by the Magistrate presiding in Part I and the case was referred to me (sitting in Part II) for trial. Here the defendant's attorney repeated his request for an adjournment, and it was denied. An official interpreter was called in and the arresting officer was then sworn. He testified as follows: " I first saw this defendant about 2:20 P.M. in the afternoon of November 17, 1948, in a northbound Madison Avenue bus at 34th Street and Madison Avenue, in the City and County of New York. I was standing in the bus near the center exit door. The defendant boarded the bus at 34th Street. From 34th Street to 42nd Street ". At this point the defendant spoke to the interpreter and that official, addressing the court, said: " The defendant doesn't wish this gentleman to be his lawyer. He wants to talk with a friend of his to get another lawyer."

Through the interpreter, I asked the defendant whether he had retained another lawyer, and the reply was: " My friend sent me a telegram that (Counselor) Cardone is coming to see me."

I ordered the record expunged and, as a matter of judicial courtesy, I referred the case back to the Magistrate presiding in Part I. No objection was made, either by the defendant or by the attorney then present and participating, to the expunging of the record. In Part I the defendant repeated his request that the case be put over so that he might be represented by counselor Cardone, and that request was granted. On November 29th, counselor Cardone appeared before me with the defendant and in his behalf, and asked for a further adjournment in order that he might submit a memorandum in support of a plea of former jeopardy. That memorandum is now before me.

The motion for dismissal of the complaint in denied and the defendant is ordered to proceed to trial.

The action of this court in ordering the record expunged was, in effect, the declaration of a mistrial. Its practical effect was to declare the first trial at an end, in order that trial of the case might be started *de novo* on another day. Starting *de novo,* it could be tried without further delay by another magistrate in the event that, on the day of adjournment, I should be sitting in another court either in this county or in any of the other four counties of New York City.

The Fifth Amendment to the Constitution of the United States provides that no person shall '' be twice put in jeopardy of life or limb,'' and the Constitution of the State of New York (art. I, § 6) similarly states that '' No person shall be subject to be twice put in jeopardy for the same offense.''

The question before this court, then, is whether the defendant's own act by which he requested and obtained the privilege of an adjournment in order that he might obtain the services of an attorney of his own choice will now be allowed to operate in such a manner as to place the defendant beyond the court's power to proceed to a determination on the merits. Does the law, upon the facts stated, permit the defendant to escape trial, and require the court to open the door and bow him out? While no precise precedent has been found on this point, settled principles and authorities concur in rejecting such a result.

'' The immunity from second jeopardy granted by the constitution is a personal privilege which accused may waive. Such a waiver may be express or implied, in fact generally it is implied. Thus a person who has been placed on trial before a competent court and a jury impaneled and sworn, but who by his own act during the course of the proceedings makes it impossible for a valid verdict or judgment to be rendered * * * is not entitled on a subsequent indictment for the same offense to urge the defense of former jeopardy.'' (22 C. J. S., Criminal Law, § 277.)

There are numerous clear rulings by the courts of our own jurisdiction which limit and define the constitutional immunity against double jeopardy. A review of some of these decisions and their comparison with leading New York cases where double jeopardy has actually been found to have existed, shows clear and cogent reasons why this proceeding must be continued.

In *People* v. *Palmer* (109 N. Y. 413 [1888]) the defendant's conviction of third degree assault, following an indictment for first degree assault, was reversed on questions of law only, and a new trial was ordered. The Court of Appeals held that the

case then stood as if there had been no trial at all, and a plea of double jeopardy was denied, with the statement that '' It would be a grievous miscarriage of justice, and the intent of the law would be thwarted if it should be held that a reversal, upon a prisoner's appeal for errors of law upon his trial, had the effect of putting it out of the power of the People to further try him under the indictment, when his guilt might be competently established.'' The court stressed, in that case, '' the sounder doctrine which recognizes a distinction between jeopardy incurred with the consent of the prisoner and jeopardy incurred without that consent.''

*People ex rel. Herbert* v. *Hanley* (142 App. Div. 421 [1911]) involved a situation in which the court, during the progress of a trial, granted the prosecutor's motion to withdraw a juror on the basis of certain information which indicated that the continued presence of two of the jurors might interfere with the orderly progress of the trial. The Appellate Division upheld this action, stating: '' There can be no doubt as to the power of the trial court, in the exercise of a sound discretion, to declare a mistrial and to discharge the jury before the final submission to them of the issues when, in the opinion of the court, matters have arisen during the course of the trial which make such procedure advisable.''

The principle of jeopardy by consent was again upheld, in the year 1942, in *People ex rel. Stevens* v. *Warden of City Prison* (35 N. Y. S. 2d 498). There an adjournment was refused and three defendants separately charged were put on trial jointly. Upon the defendants' objection a mistrial was declared, and the court proceeded to try each defendant separately. '' Former jeopardy,'' said the court, '' is waived when [it] * * * is ended by the motion or protest of the defendant * * * Having obtained what he asked for he may not use it to evade the law.'' Again this principle appears in *People* v. *Pearl* (272 App. Div. 563 [1947]).

The position taken in the New York cases cited above bears out the rule established by the United States Supreme Court almost a century and a quarter ago when, in *United States* v. *Perez* (9 Wheat. [U. S.] 579 [1824]), it held that '' the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.'' While the Supreme Court stated in that case that it

would be impossible "to define all the circumstances, which would render it proper to interfere," the rule of reason which it recited has been consistently followed and has been elaborated upon in numerous decisions of Federal and State courts. It was restated in 1902 in *Dreyer* v. *Illinois* (187 U. S. 71), and it was followed in *Lovato* v. *New Mexico* (242 U. S. 199 [1916]), where the trial court's action in discharging a jury after a witness had been sworn, in order that the defendant might be properly arraigned, was upheld as an act which was "clearly within the bounds of sound judicial discretion."

In *State* v. *Osborne* (152 La. 909 [1922]), where the testimony of a witness for the People indicated that a certain event had occurred on a date other than that stated in the information, and the defendant thereupon requested a bill of particulars, the case was reassigned for a future day and the court's refusal to entertain a plea of former jeopardy was upheld on the ground that it was the *defendant's motion* which caused the reassignment of the case. And in *Caballero* v. *Hudspeth* (114 F. 2d 545 [1940]), further specific expression was given to this rule in the language of the court that "The right to not be placed in jeopardy twice for the same offense is a personal right. It is an immunity granted to the citizen by our constitution, and *may be waived.*" (Italics supplied.)

On the other hand, New York courts have joined with Federal and other State courts in expressing deep regard for the constitutional rights of persons charged with the commission of crimes and they have jealously protected such rights wherever former jeopardy has actually been shown and where this jeopardy has *not been waived* (as in the instant case) by act or word of the defendant.

*Wherever double jeopardy has been found in this jurisdiction* — whether the case involved the arbitrary dismissal of a jury before it had reached its verdict (*People ex rel. Stabile* v. *Warden of City Prison*, 202 N. Y. 138 [1911]), or the dismissal of the original complaint and the drawing of a new one for a more serious charge after the People's case had been completed (*People* v. *Goldfarb*, 152 App. Div. 870, affd. 213 N. Y. 664 [1912]), or the discharge of a jury while deliberating because through the prosecution's neglect a defendant was being tried for commission of a misdemeanor instead of a felony (*People* v. *Thrum*, 143 Misc. 7 [1932]), or the holding of a defendant for retrial by a magistrate, over defendant's objection, after the People had rested, when the magistrate discovered the fact

(already known to the defendant's counsel) that the defendant's fingerprint record was before him (*People ex rel. Cohen v. Collins,* 238 App. Div. 592 [1933]) — *there has been completely lacking the element of consent by the defendant, either express or implied, to the action taken by the court.*

These various decisions clearly indicate that under certain broad circumstances a defendant may waive his right to immunity against double jeopardy. Certainly, in the case before me, the defendant must be deemed to have consented to the declaration of a mistrial. The fact that he requested an adjournment before he came before me and then restated it — giving the true reason for his request — as soon as the officer began his testimony and before his then attorney had had any opportunity to take an active part in the trial, reveals the defendant's preexisting intention to obtain the services of a different attorney. The Sixth Amendment to the Federal Constitution guarantees the right of a defendant to be represented by counsel of his own choosing. This right a trial court must always protect. Reasonable time and a fair opportunity must be given to each defendant to secure such a counsel and, with that counsel's assistance, to prepare for trial (*People* v. *Price,* 262 N. Y. 410 [1933]; *People* v. *McLaughlin,* 291 N. Y. 480 [1944]). His request for time to avail himself of this constitutional privilege constituted consent to the declaration of a mistrial.

Certainly the scrupulous solicitude of this court in protecting this defendant and respecting his wishes, in order that his right to a fair trial might be preserved, forecloses and estops him, now, from asserting the plea of former jeopardy.