PEOPLE *v.* HENLEY

1. CONSTITUTIONAL LAW—CRIMINAL LAW—RIGHT TO COUNSEL.

   Constitutional guarantee of the right to counsel affords a criminal defendant reasonable opportunity to obtain counsel of his own choosing and a fair opportunity to consult with counsel in preparation of his proceeding and at his own whim (US Const, Am 6; Const 1963, art 1, § 20).

2. CRIMINAL LAW—RIGHT TO COUNSEL.

   Appellate courts must not only guard the criminal defendant's right to counsel but must also be equally concerned with the need to dispose of litigation with proper diligence to avoid breakdown of the judicial process occasioned by long delays.

3. CRIMINAL LAW—RIGHT TO COUNSEL.

   A criminal defendant must exercise the right to counsel within the framework of the judicial process and it may not be used as a device to prevent bringing defendants to justice.

4. CRIMINAL LAW—ASSISTANCE OF COUNSEL—DENIAL OF COUNSEL.

   Ruling that the defendant's trial would proceed as scheduled without counsel was proper where the defendant repeatedly rejected court-appointed counsel and failed to secure retained counsel, despite many opportunities to do so, because the defendant was using the right to counsel as a device to avoid trial.

5. CRIMINAL LAW—TRIAL—JEOPARDY.

   Jeopardy attaches when a jury has been impaneled and sworn.

6. CRIMINAL LAW—DOUBLE JEOPARDY.

   Discharge of a jury without the defendant's consent or legal justification before a verdict is reached is generally equiv-

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 21 Am Jur 2d, Criminal Law § 309 *et seq.*
[4] 21 Am Jur 2d, Criminal Law § 310.
[5] 21 Am Jur 2d, Criminal Law § 175.
[6] 21 Am Jur 2d, Criminal Law § 179 *et seq.*
[7–11] 21 Am Jur 2d, Criminal Law § 180.

alent to an acquittal and bars retrial; however, in some unusual cases, a defendant's right to have his trial completed by a particular tribunal must be subordinated to the public interest in fair trials designed to end in just judgments.

7. CRIMINAL LAW—MISTRIAL—DOUBLE JEOPARDY.

A jury may be discharged from giving a verdict, a mistrial may be declared, and a criminal defendant subjected to the possibility of retrial, without the defendant's consent and even over his objection, where it appears to the court that there is a manifest necessity to declare a mistrial or that failure to declare a mistrial would defeat the ends of public justice.

8. TRIAL—MISTRIAL—REVIEW.

Appellate courts must exercise wise and tolerant restraint in reviewing a trial court's decision to declare a mistrial and interfere only where a clear abuse of discretion clearly appears on the face of the record.

9. CRIMINAL LAW—TRIAL—MISTRIAL—DOUBLE JEOPARDY.

There is no hard and fast formula for determining whether the declaration of a mistrial will, as a necessary consequence, result in freeing the defendant from retrial; whether double jeopardy will thereafter be available as a bar to subsequent prosecution depends on the facts of each case and the urgency of its circumstances.

10. CRIMINAL LAW—TRIAL—MISTRIAL—DOUBLE JEOPARDY.

The prohibition against double jeopardy does not bar retrial where the trial judge, in the exercise of his discretion, declares a mistrial out of solicitude for and in the interest of protecting the rights of a defendant even if the defendant did not consent to a mistrial being declared.

11. CRIMINAL LAW—TRIAL—MISTRIAL—DOUBLE JEOPARDY—RIGHT TO COUNSEL.

Trial court's declaration of mistrial was not an abuse of discretion and the prohibition against double jeopardy did not bar retrial where the defendant, who was without counsel, had on many occasions requested additional time to hire a lawyer and prepare his defense even though he was using the right to counsel to avoid trial, where the mistrial was declared to allow defendant time to secure counsel and prepare a defense, and where there was no evidence that the declaration of mistrial was made to improve the prosecution's position or from fear that the jury was likely to acquit the defendant.

Appeal from Recorder's Court of Detroit, John P. O'Hara, J. Submitted Division 1 June 5, 1970, at Detroit. (Docket No. 110.) Decided August 24, 1970.

G. T. Henley was convicted of assault with intent to commit rape and attempt to procure an act of gross indecency between male and female persons. Defendant appealed. Affirmed. Defendant appealed to the Supreme Court by leave granted. Reversed and remanded to Court of Appeals for "ascertainment of facts which will fairly frame the alleged issue of double jeopardy and a judicial determination thereof". Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Rhea C. Marchand, Arthur Bishop* and *Angelo A. Pentolino,* Assistant Prosecuting Attorneys, for the people.

*Donald L. Hobson,* for defendant on remand to Court of Appeals.

Before: LESINSKI, C. J., and FITZGERALD and J. H. GILLIS, JJ.

J. H. GILLIS, J. This case is here by order of the Supreme Court remanding the record "for ascertainment therefrom of facts which will fairly frame the alleged issue of double jeopardy and for a judicial determination thereof". *People* v. *Henley* (1969), 382 Mich 143, 150, *reversing* (1965), 2 Mich App 54. The question presented is whether the defense of double jeopardy was available as a bar to the retrial of defendant Henley, after his previous trial had

ended abortively when the trial court, *sua sponte,* declared a mistrial.

We state the facts solely as they relate to the issue of double jeopardy.

I

On June 20, 1963, defendant was arraigned on a warrant charging (1) assault with intent to commit rape (MCLA § 750.85 [Stat Ann 1962 Rev § 28.280]) and (2) attempt to procure an act of gross indecency between male and female persons (MCLA § 750.338b [Stat Ann 1964 Rev § 28.570(2)]). An attorney was assigned by the court to represent the defendant and an examination was conducted in Recorder's Court on July 11, 1963. On October 24, 1963, defendant advised the court that he desired to engage his own counsel and that he did not want assigned counsel. The court permitted assigned counsel to withdraw from the case. Several adjournments of the case were granted in order that defendant might retain counsel of his own choosing.

Trial was scheduled for December 12, 1963. As of December 9, defendant had not retained counsel and on that date he was offered another assigned counsel by the then presiding judge of the Recorder's Court. The defendant refused, however, to sign the required affidavit and petition for appointment of counsel. The following colloquy took place between defendant and the court:

*"The Court:* Mr. William J. Coughlin was assigned counsel in July. He has some difficulty with his client who insisted he was going to get his own lawyer. Judge Krause permitted Mr. Coughlin to resign.

"The defendant was before me at which time he indicated he was going to get his own lawyer last week. I have talked to him and have given him

several days to get his own lawyer.   He appears
here today without a lawyer.   I have offered to ap-
point John C. Myers, who is present at this time, to
represent him.   The defendant has been presented
with an affidavit by Mr. Myers indicating he is with-
out funds but refuses to sign it.

"*The Court:*   Now, the trial is set for the 12th.
If you don't want a lawyer, it is all right.   We can't
force a lawyer on you but you are going to trial on
December 12th.

"*Defendant: I want a lawyer and ample time to
prepare my defense.*

*       *       *

"*The Court:*   The lawyer can't determine what is
ample time until he gets in there, I am not going to
wait until the 12th.

"*Defendant:*   May I ask you, now, *could I have
ample time with this lawyer to prepare a defense?*

"*The Court:*   That will be up to your lawyer and
you.   He has to go over the case with you.   He will
consult with you right away.   I know you won't have
ample time on the 12th, because I won't permit it.   I
won't permit another delay *   *   *   .

*       *       *

"*Defendant:*   As a judge, do you think four days
is sufficient time for a new lawyer?

"*The Court:*   Yes, in some cases.   It is your fault.
Mr. Coughlin was your lawyer back in July.   He is a
very able lawyer.   I am not talking to you any more.
I have offered you an attorney, and you refused to
accept Mr. Myers.   The only way you can have Mr.
Myers is for you to sign this affidavit.   Do you wish
to sign the affidavit?

*       *       *

"*Defendant:*   Sir, you won't let me answer.
"*The Court:*   What is your answer?
"*Defendant:*   When I do answer, it irritates you.
"*The Court:*   You don't irritate me, but I went
through this before, and two other judges have been

through it. I am not going to wait until the 12th and have the police department subpoena witnesses only to have you tell me you haven't got a lawyer.

\*          \*          \*

*"Defendant:* I have no desire to procrastinate or delay my case, or cause the court or anyone else any undue trouble. *The only thing I seek is ample time, a lawyer, and ample time for him and I to get together and fight my case.* If they find me guilty, it is a life charge, and that wouldn't be so bad if I was guilty. I begged for a lie detector test and begged for the girl to get one.

*"The Court:* I am not going to argue the merits of your case. I will repeat again that it has been five months since you had a lawyer. You have no lawyer. I am offering you a lawyer. I assume in absence of you voluntarily signing this affidavit that you do not want a lawyer. I want to tell you that in view of all the facts there will be no adjournment granted on December 12th. You will go to trial on this case. You can have a jury and it won't be tried by me. Take him away." (Emphasis supplied.)

Three days later, December 12, 1969, defendant Henley appeared for trial before Recorder's Court Judge John P. Scallen. Judge Scallen made the following statement on the record before calling a jury:

"This court, this morning, spent at least an hour in private conversation with the defendant in the presence of the prosecuting attorney, Jesse Eggleton, assigned to this court, and also conferred with him for at least another half hour privately.

"The defendant advised the court that he intended to get—try to hire George BeGole, but was advised that Mr. BeGole was too busy to handle the matter, and that he knew Walter A. Kurz, and would be satisfied with him; this court advised the defendant that he knew Mr. Kurz as a practitioner of this court and his relationship with this court was very pleas-

ant and he would be competent counsel and his rights would be fully protected by Mr. Kurz.

"The court went into great detail about both the first and second counts in explaining them to the defendant, and then called Mr. Kurz, who was at his home, and this court then waited forty-five minutes for Mr. Kurz' arrival, and since he has arrived Mr. Kurz has spent around or almost two hours talking to the defendant.

*     *     *

"This court has, therefore, appointed Walter A. Kurz as attorney for this defendant, although the defendant refuses to sign an affidavit that he has no funds and still does not object to Mr. Kurz as his attorney.   He said he would hire Mr. Kurz if he had the money to pay him.  In view of the circumstances, *the only thing that the defendant now objects to is that he thinks that the lawyer hasn't time to prepare his own case.*   There are 15 witnesses in the case.

"This court has advised the defendant that we would draw the jury this afternoon and start taking testimony tomorrow morning at 9 o'clock and as soon as the complaining witness gets through testifying then Mr. Kurz would know what he had to meet by way of preparation and that if Mr. Henley would give him a list of the witnesses, the witnesses would be subpoenaed.   Tomorrow being Friday, the weekend of Saturday and Sunday and also this court cannot held court on Monday   *   *   *   .

"In view of that, Mr. Kurz would have three days over the weekend and Monday to get all of his witnesses that he wanted together to answer for the defense, in the event the people should finish their case, if they could do so, before Friday closing of court.

"We will, therefore, proceed to jury."  (Emphasis supplied.)

Thereafter, a jury was duly impaneled and sworn. On the following day, Friday, December 13, 1969, trial commenced. At the end of the day, the case was adjourned for the weekend.

During the weekend adjournment, defendant Henley again sought to retain counsel of his own choosing. Judge Scallen permitted assigned counsel (Kurz) to withdraw from the case after defendant requested his discharge. A new attorney (Early) then entered his appearance on behalf of defendant.

On December 18, defendant, together with attorney Early, appeared before Judge Scallen for resumption of trial. Out of the presence of the jury, the following transpired:

"*Defendant:* Mr. Early is here if he can come in and continue the case—I gave another attorney $50 and told him that if Mr. Early didn't take the case—

"*The Court:* Who is the other lawyer?

"*Defendant:* Mr. Schwartz come up, Mr. Bibbs come up and said if Mr. Early didn't take the case that he would take the $200 and file his appearance and represent me for that. Now, if I can get Mr. Early to represent me for the $200—

"*The Court:* Mr. Early has already filed his appearance for you.

"*Defendant:* If I can get him to do that, then I will, but Mr. Kurz, I object to Mr. Kurz from the start—

\*          \*          \*

"*The Court:* Mr. Early, you entered your appearance; are you leaving it in?

"*Mr. Early:* I can't leave it in, your Honor; this man said at the time I signed the appearance that he's going to hand me the money right then and there. I made a receipt out to him to that effect, which I said—

"*The Court:* Have you received any money at all?

"*Mr. Early:* I received $100 yesterday. He is to give me $200 right now.

*"Defendant:*  Would you represent me for $200?

*"Mr. Early:*  I already said I would take $200 you have now—

*"Defendant:*  Would that cover my lawyer fee?

*"Mr. Early:*  It would cover your lawyer's fee because I have entered—at least entertained entering a general appearance.

*"Defendant:*  Under those circumstances I will give him the money if I get a receipt that he is my lawyer.

*"Mr. Early:*  You've already got your receipt.

*"The Court:*  There's your receipt right in the file; he's entered his appearance in the file. * * * Mr. Kurz is out of the case, and Mr. S. Allen Early is in the case, if you carry out your agreement. It's up to you and Mr. Early—you got a receipt for $100?

*"Mr. Early:*  I gave him a receipt and I took it back.

*"The Court:*  Give him the balance of the money and you're all set * * * .

*"Defendant:*  My problem is can I get a lawyer for $200 and that's about the size of it.

*"The Court:*  There's your lawyer right there, you've got one.

*"Defendant:*  If I get the receipt.

*"The Court:*  You've got it right there in your hand.

*"Mr. Early:*  Your Honor, it is apparent I couldn't help this man; I think it best that he go his way and I go my way. He probably wouldn't be satisfied when I get through anyway, no matter what happened.

*"Defendant:*  I definitely be satisfied if I can just meet your price.

*"Mr. Early:*  Give me the $200 and that's the end of it.

*"The Court:*  Do you want to pay him the $200 that he's asking? I can't force the man to do anything, though.

"*Defendant:* If I can get him for my attorney for that price.

"*The Court:* He's already told you he's entered his appearance here—do you want me to take it out and tear it up? If you're not going to hire him that's what I am going to do.

"*Mr. Early:* If the court will excuse me I would like to leave.

"*The Court:* Here's your appearance, Mr. Early; you tear it up. (*Wherein a document was handed to Mr. Early which he proceeded to tear up.*)

"*The Court:* You are excused, Mr. Early, under the circumstances."

Attorney Early then left the courtroom. At this stage of the proceeding, defendant Henley was, once again, without counsel.

Judge Scallen immediately ordered that Henley be returned to the bullpen. The jury was recalled to the courtroom and Judge Scallen announced:

"Members of the jury, I am sorry for the delay but this attorney, who we had expected was going to take Mr. Kurz' place was not available—he arrived but arrangements could not be made for him to handle the defendant as his client."

There followed, *sua sponte,* Judge Scallen's declaration of a mistrial.

## II

In due course, we shall consider defendant Henley's briefed and argued contention that he could no longer be tried for the charged offenses following Judge Scallen's declaration of a mistrial. We pause momentarily, however, to remind the trial bench of an important precept—one designed to guarantee the expeditious handling of criminal matters in the courts of this state.

The record in this case fairly demonstrates repeated efforts on the part of defendant Henley to avoid trial on the merits. All too frequently and without explanation, he requested that his record attorney be dismissed, that he be given time to secure his own lawyer and prepare his defense, and that new counsel be allowed to intervene. Over one month elapsed after the court first permitted assigned counsel to withdraw in order that Henley might secure his own lawyer; yet the record reveals that defendant made no attempt to obtain counsel. The defendant's capricious refusal on two occasions to sign the required affidavit and petition for appointment of assigned counsel further evinces an attitude on his part to frustrate the judicial process.

Such inordinate delay cannot be tolerated. And this is true notwithstanding the constitutionally guaranteed right to counsel.

The right to assistance of counsel is guaranteed each defendant by virtue of the Constitution of the State of Michigan[1] and the Constitution of the United States.[2] This guarantee affords a defendant a reasonable opportunity to obtain counsel of his own choosing. See *Powell* v. *Alabama* (1932), 287 US 45 (53 S Ct 55, 77 L Ed 158); *United States* v. *Johnston* (CA 6, 1963), 318 F2d 288. It also affords a defendant a fair opportunity to consult with counsel and prepare his defense. See *Powell* v. *Alabama, supra; Avery* v. *Alabama* (1940), 308 US 444 (60 S Ct 321, 84 L Ed 377); *Willis* v. *Hunter* (CA 10, 1948), 166 F2d 721; *Townsend* v. *Bomar* (CA 6, 1965), 351 F2d 499; *Roberts* v. *Dutton* (CA 5, 1966), 368 F2d 465; see, also, *People* v. *Gorka* (1969), 381 Mich 515, 521, fn 3.

---

[1] Const 1963, art 1, § 20.

[2] US Const, Am 6, made obligatory upon the States by the Fourteenth Amendment, *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L Ed 2d 799).

Our cases make it clear, however, that the right to counsel does not include the right to insist, without adequate explanation, upon changing counsel at each new turn of the proceeding and at the whim of the defendant. In light of the record in this case, quoted *supra,* we reiterate what was said by this Court in *People* v. *Clark* (1968), 9 Mich App 602, 605:

"While the appellate courts of this land zealously guard the rights of defendants to counsel, they equally concern themselves with the need to dispose of litigation with proper diligence to avoid a breakdown of the judicial process which is threatened by long delays.

\* \* \*

*"The right to counsel must be exercised by a defendant within the framework of the judicial process and cannot be employed as a device to prevent bringing a defendant to justice."* (Emphasis added.)

We think it evident that defendant Henley attempted to employ the right to counsel as a device to avoid trial. Under these circumstances, the presiding judge of Recorder's Court was well within his authority in informing defendant that, with or without counsel, trial would commence as scheduled on December 12th. See *People* v. *Stinson* (1967), 6 Mich App 648; *People* v. *Gibbs* (1970), 21 Mich App 137; *People* v. *McClain* (1970), 25 Mich App 691; *People* v. *Clark, supra.*

We proceed to the merits of defendant's jeopardy claim.

### III

The people concede that jeopardy attached when the jury was impaneled and sworn. *People* v. *Schepps* (1925), 231 Mich 260; *People* v. *Tillard* (1947), 318 Mich 619; *People* v. *Anglin* (1967), 6

Mich App 666. Thereafter, a defendant is ordinarily entitled to have the trial proceed to its normal conclusion, *i. e.,* verdict by the jury or judgment by the court. Discharge of the jury before that time without defendant's consent or without legal justification is equivalent to an acquittal and bars retrial. *People* v. *Schepps, supra; People* v. *Anglin, supra.*

The rule that a trial must proceed to its normal conclusion after the jury is sworn is not, however, an inexorable one, admitting of no qualifications or exceptions. The prohibition against double jeopardy does not signify that in all cases where the defendant has been placed in jeopardy he is entitled to go free if the trial falls short of final judgment. Such a doctrine, as noted by the United States Supreme Court in *Wade* v. *Hunter* (1949), 336 US 684 (69 S Ct 834, 93 L Ed 974), would create an insuperable obstacle to the administration of justice in many cases where there is no semblance of the oppressive practices at which the double jeopardy prohibition is aimed. In *Wade,* it was recognized that in some unusual situations a defendant's right to have his trial completed by a particular tribunal must be subordinated to the public interest in fair trials designed to end in just judgments. See *Wade, supra,* 336 US at 688, 689 (69 S Ct at 836, 837, 93 L Ed at 978).

The principles which govern application of the concept of double jeopardy to situations involving the declaration of a mistrial were first enunciated by Mr. Justice Story in *United States* v. *Perez* (1824), 22 US (9 Wheat) 579, 580 (6 L Ed 165) as follows:

"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into

consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge, and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office."

Mr. Justice Story's pronouncement has been regarded ever since as establishing the test for determining whether early termination justifies a plea of double jeopardy. Moreover, the *Perez* test has been adopted in many Michigan decisions. *In re Ascher* (1902), 130 Mich 540; *People* v. *Sharp* (1910), 163 Mich 79; *In re Earle* (1946), 316 Mich 295; *People* v. *Schepps, supra; People* v. *Anglin, supra.*

Obviously, it is impossible to catalogue all circumstances which will, without more, require a holding of double jeopardy when a mistrial is ordered without defendant's consent. No mechanistic rule exists which compels a finding of double jeopardy whenever a criminal trial is discontinued, or which suggests that every time trial begins, the defendant is entitled to go free if the trial does not end in final judgment. Rather, application of the test of "manifest necessity" to prevent thwarting the ends of justice is left in the first instance to the sound discretion of the trial judge. *United States* v. *Perez, supra; People* v. *Anglin, supra.* If in his judgment emergent circumstances persuade him that the ends

of justice for the defendant and for the state cannot be achieved without aborting the trial, neither the Federal nor the state Constitution prohibits such an order.

"Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried  *  *  *  ." *Gori* v. *United States* (1961), 367 US 364, 368 (81 S Ct 1523, 1526, 6 L Ed 2d 901, 904).

This is particularly true where the circumstances which the trial judge believes compel the order do not smack of bad faith or oppressive conduct by the prosecution or an effort to improve the chances of conviction upon retrial.  See *Gori* v. *United States, supra,* at 369 (81 S Ct at 1526, 6 L Ed 2d at 905); *United States* v. *Tateo* (1964), 377 US 463, 468, fn 3 (84 S Ct 1587, 1590, 12 L Ed 2d 448, 452).

Finally, application of the *Perez* test requires that, in appraising the trial court's decision to declare a mistrial, appellate courts must exercise a wise and tolerant restraint.  Interference with the discretionary action of the trial court is warranted only where an abuse of discretion clearly appears on the face of the record.  See *Gori* v. *United States, supra,* 367 US at 368 (81 S Ct at 1526, 6 L Ed 2d at 904); *People* v. *Anglin, supra,* 674.

We reiterate that there is no hard and fast formula for determining whether the declaration of a mistrial will, as a necessary consequence, result in freeing the defendant from retrial.  Whether double jeopardy will thereafter be available as a bar to subsequent prosecution depends on the facts of each case and the urgency of its circumstances.

We are not, however, without precedential guidance on the peculiar facts of this case. The record here, in relevant respects, fairly duplicates that considered by the United States Supreme Court in *Gori* v. *United States, supra.* And, for reasons about to appear, we hold that the defense of double jeopardy was unavailable as a bar to Henley's retrial.

In *Gori,* after the jury had been impaneled and sworn and evidence introduced, a situation arose which in the opinion of the trial judge required, *sua sponte,* the declaration of a mistrial. Apparently, the trial judge was convinced that the prosecution intended to introduce, during direct examination of one of its witnesses, evidence of other crimes committed by the accused. A mistrial was ordered and the case was later retried over defendant's jeopardy objection. *Gori's* subsequent conviction was sustained, *en banc,* by the Court of Appeals for the Second Circuit (CA 2, 1960), 282 F2d 43, and by the United States Supreme Court.

The Second Circuit, per Judge Clark for the majority, noted that, although the trial judge acted overassiduously in ordering the mistrial, "it seems clear that he was acting according to his convictions in protecting the rights of the accused." 282 F2d 43, 46. The Court concluded, p 48:

"Here the defendant was in no way harmed by the brief trial which, indeed, revealed to him the prosecution's entire case. He was thus in a position to start anew with a clean slate, with all possibility of prejudice eliminated and with foreknowledge of the case against him. The situation was quite unlike the more troublesome problems found in various of the cases, as where the prosecution desires to strengthen his case on a new start or otherwise provokes the declaration of mistrial, or the court has acted to the prejudice of the accused, or the ac-

cused has actually been subject to two trials for essentially the same offense. On the other hand, for the defendant to receive absolution for his crime, later proven quite completely, because the judge acted too hastily in his interest, would be an injustice to the public in the particular case and a disastrous precedent for the future."

On *certiorari,* the United States Supreme Court affirmed. Writing for the majority, Mr. Justice Frankfurter announced the controlling *desideratum* at the very outset of his opinion: "In any event, it is obvious, as the Court of Appeals concluded, that the judge 'was acting according to his convictions in protecting the rights of the accused.'" 367 US at 366 (81 S Ct at 1525, 6 L Ed 2d at 903). The opinion concludes:

"Suffice that *we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial.* It would hark back to the formalistic artificialities of seventeenth century criminal procedure so to confine our federal trial courts by compelling them to navigate a narrow compass between Scylla and Charybdis. We would not thus make them unduly hesitant conscientiously to exercise their most sensitive judgment—according to their own lights in the immediate exigencies of trial—for the more effective protection of the criminal accused." 367 US at 369 (81 S Ct at 1527, 6 L Ed 2d at 905). (Emphasis supplied.)

Fairly construed, the *Gori* opinion suggests the following rule: Where the trial judge in the exercise of his discretion declares a mistrial out of solicitude for and in the interest of protecting the rights of the accused, the prohibition against double jeopardy is not available as a bar to retrial. And this is true notwithstanding the absence of consent

to the declaration on the part of the defendant.[3]
This interpretation of the *Gori* rule is in accord with
a number of decisions, both state and Federal, like-
wise construing the *Gori* opinion.    See *State* v.
*Farmer* (1966), 48 NJ 145 (224 A2d 481), *cert. den.*
(1967), 386 US 991 (87 S Ct 1305, 18 L Ed 2d 335);
*United States* v. *DiFronzo* (CA 7, 1965), 345 F2d 383,
*cert. den.* (1965), 382 US 829 (86 S Ct 67, 15 L Ed
2d 74); *Vaccaro* v. *United States* (CA 5, 1966), 360
F2d 606; *McKissick* v. *United States* (CA 5, 1968),
398 F2d 342; *United States* v. *Maroney* (CA 3,
1968), 404 F2d 233, *cert. den.* 394 US 949 (89 S Ct
1287, 22 L Ed 2d 483).

We are convinced that the rationale of *Gori* v.
*United States, supra,* applies here.    A careful re-
view of the entire record leads us to conclude that
Judge Scallen's primary motive for declaring the
mistrial was a sincere effort on his part to protect
and assist Henley.

Undoubtedly, Judge Scallen was aware of defend-
ant's repeated insistence that he be given adequate
time to consult with counsel in order to prepare the
defense.    The record, quoted *supra,* is replete with
remarks by Henley to the effect that:    "The only
thing I seek is ample time, a lawyer, and ample time
for him and I to get together and fight my case."
Moreover, it is evident from the record that Judge

---

[3] That the absence of consent is legally irrelevant is evident from
the opinions of both the Second Circuit and the Supreme Court in
*Gori.*  The Second Circuit noted:

"Thus while consent may bar resort to the plea, its absence does
not relieve the judge of responsibility, and discretion to discontinue
a particular trial where justice so requires."    282 F2d at 47.

The Supreme Court agreed:

"Where, for reasons deemed compelling by the trial judge, who is
best situated intelligently to make such a decision, the ends of sub-
stantial justice cannot be attained without discontinuing the trial,
*a mistrial may be declared without the defendant's consent and even
over his objection, and he may be retried  *  *  *  .*"   367 US at
368 (81 S Ct at 1526, 6 L Ed 2d at 904).   (Emphasis supplied.)

Scallen respected defendant's requests, notwithstanding an apparent intent on defendant's part to frustrate the judicial process. See Part II of this opinion, *supra.* Under these circumstances, we think it apparent that Judge Scallen declared a mistrial in order to give defendant Henley additional time to secure new counsel and to prepare his defense. As previously noted, at the time the court declared the mistrial, the defendant was without counsel—assigned or otherwise.

Since the record fairly indicates that when he declared the mistrial, Judge Scallen "was acting according to his convictions in protecting the rights of the accused", *Gori* v. *United States, supra,* 367 US at 366 (81 S Ct at 1525, 6 L Ed 2d at 903), we conclude that the prohibition against double jeopardy was not available to bar retrial of defendant Henley. Accord, *People* v. *Caballero* (1948), 194 Misc 145 (84 NYS2d 762); see also, *Holt* v. *State* (1945), 223 Ind 217 (59 NE2d 563). Nor can we characterize Judge Scallen's protective efforts as an abuse of discretion.

The admonitions expressed in *Downum* v. *United States* (1963), 372 US 734 (83 S Ct 1033, 10 L Ed 2d 100), relied on by defendant, do not in our judgment invalidate the teaching of the *Gori* opinion. See *State* v. *Farmer, supra,* 48 NJ at 181 (224 A2d at 500); *United States* v. *DiFronzo, supra,* 386; *Vaccaro* v. *United States, supra,* 608. Nor is *Downum* in point. *Downum* involved the granting of a mistrial on motion of the government which had discovered that one of its chief witnesses had not been summoned and was not present. The United States Supreme Court took the view that the situation was simply one where the prosecution had entered upon trial without sufficient evidence to convict. See 372 US at 737 (83 S Ct at 1035, 10 L Ed

2d 103). In this case, however, there is nothing in the record to suggest that the mistrial was declared in order to improve the position of the prosecution. Nor is there any intimation that the mistrial here resulted from a fear that the jury was likely to acquit the accused. Compare, *United States* v. *Tateo, supra,* at 468, fn 3 (84 S Ct at 1590, 12 L Ed 2d at 452). Finally, *Downum* did not criticize or overrule *Gori* v. *United States, supra.* On the contrary, it reiterated the principle that in deciding whether the jeopardy bar is to be applied, each case must turn on its own facts. See 372 US at 737 (83 S Ct at 1035, 10 L Ed 2d at 103).

We are also aware of this Court's recent decision in *People* v. *Carlton Brown* (1970), 23 Mich App 528, where we held that dismissal of the jury to permit the prosecution to amend the information without defendant's consent followed by retrial constituted double jeopardy. While the opinion in *Brown* is based on defendant's lack of consent to the dismissal of the jury, the case must be read in its factual context. There the dismissal would have benefited the prosecution and would not have furthered the rights of the defendant. Thus, consent was necessary to bar application of double jeopardy. The *Brown* opinion cannot, however, be read to mean that consent is required where no benefit goes to the prosecution, where the purpose of the mistrial was for the protection of defendant's rights, and where the prejudice at the first trial was not the result of bad faith misconduct of the prosecutor.

On the facts of this case, the jeopardy bar was unavailable. Accordingly, defendant Henley was lawfully retried and his conviction upon retrial is

Affirmed.

All concurred.