Charles **RINGSTAFF** and Roosevelt **Cooper, Petitioners,**

v.

Barry **MINTZES, Respondent.**

No. 81–71259.

United States District Court, E. D. Michigan, S. D.

May 24, 1982.

Charles Ringstaff, Roosevelt Cooper, in pro. per.

C. Michael Mathis, Asst. Atty. Gen., Detroit, Mich., for respondent.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

The petitioners Charles Ringstaff and Roosevelt Cooper are inmates in the State Prison of Southern Michigan. Both are serving life sentences following jury convictions for first degree murder and conspiracy to commit murder in the death of a 16 year old newspaper boy. They bring this action pursuant to 28 U.S.C. § 2254, seeking habeas corpus relief from alleged constitutional violations of their right to a fair trial.[1] The state has moved to dismiss petitioners' application for relief asserting that they have failed to state claims upon which relief can be granted. For the reasons which follow we must grant that motion.

### I.

In November, 1970, an Oakland County Citizens Grand Jury returned a two-count indictment against the petitioners[2] charging them with murder and conspiracy to commit murder in the death of Thomas Eldridge. Eldridge, a 16 year old newspaper boy was killed by multiple gunshot wounds while delivering newspapers along his route in Pontiac, Michigan.

Because the crime was highly publicized, the petitioners were granted change of venue and were subsequently convicted by a jury in Grand Rapids in November, 1971, of murder and conspiracy to commit murder. Their convictions were later overturned by the Michigan Court of Appeals for the failure of the state to afford the petitioners a preliminary examination following their indictment by the grand jury.[3]

Following their reindictment by a Citizens Grand Jury on the same charges the state made its intentions known to try both petitioners and a third defendant, Logan, jointly. Petitioners moved to sever their trial from Logan's on the grounds that their defenses were antagonistic to his. Logan also moved for severance. The prior trials of petitioners and of Logan had been separate. The court denied both motions, and proceeded to trial.

During the course of trial it became known that a prosecution *res gestae* witness, Ida Mae Borner, had died. Ms. Borner

---

1. Petitioners seek relief from the following violations of their right to a fair trial: (1) that the trial court erred by refusing to accept their voluntary offers to plead guilty to second degree murder over the objection of the prosecutor; (2) that a mistrial should have been granted because of prosecutorial misconduct; (3) that the court erred by not instructing the jury on the lesser included offense of second degree murder *despite* their insistance that he not so charge the jury; (4) that the grand jury which indicted them was not properly charged under Michigan law, thus rendering their indictment a legal nullity; (5) that they could not be tried for conspiracy following the acquittal of three other alleged co-conspirators in a trial prior to theirs; (6) that the trial court erred by refusing to read or admit the transcript testimony of a prosecution *res gestae* witness who dies prior to their second trial; (7) that the trial court

abused its discretion by refusing to grant a motion for severance of trials when it knew that the defenses of the co-conspirators were antagonistic.

2. All told, six persons were indicted for the murder of Eldridge. Donald Logan, age sixteen, was joined in the indictment under which the petitioners were charged. The juvenile court waived jurisdiction over him and he was subsequently tried as an adult. He was tried separately from petitioners and convicted. He subsequently challenged the constitutional validity of the procedures utilized by the probate court to waive jurisdiction for his trial as an adult. He is not a party to this habeas corpus action.

3. Logan's conviction was overturned for the same reason.

had testified at the prior trials of both petitioners and Logan as to events which occurred in her home subsequent to the shooting of Eldridge.[4] The petitioners requested that the transcript of Ms. Borner's testimony at their prior trial be read to the jury. Logan's attorney objected, asserting that his client's right to confront the witness would be violated inasmuch as Logan had been tried separately initially, and had not been present at the prior trial of the petitioners to cross examine Ms. Borner. The judge sustained the objection.

Logan's attorney then requested that Ms. Borner's transcript testimony at his own separate prior trial be read. The petitioners objected, and the court, citing the confrontation problems for them which were inherent in reading that prior testimony of Ms. Borner, sustained their objection as well.

After further consideration the trial judge *sua sponte* then offered to read the transcript testimony of Ms. Borner from both trials, after which he volunteered to give the jury a curative instruction which would have limited their consideration of the testimony as it related to each defendant on trial. Both petitioners and Logan objected to this procedure and the court did not pursue it. Then, for lack of any transcript readings of Ms. Borner's testimony, both of these petitioners moved for a mistrial. The judge denied the mistrial motions.

The trial judge then reviewed the prior transcript testimony of Ms. Borner and concluded that because it was conflicting and contradictory he felt that Ms. Borner would not be *competent* to testify at the joint trial of petitioners and Logan. None of her testimony was read to the jury. Petitioners were subsequently convicted.

4. Ms. Borner's son, Perry Elam, was also charged with the murder of Eldridge. Some of the persons involved in the murder were alleged to have visited the home of Ms. Borner shortly after the crime. The basic thrust of Ms. Borner's testimony was that she could not identify a group of boys who were in her home shortly after the shooting.

Petitioners appealed as of right to the Michigan Court of Appeals, which reversed their convictions. The Court of Appeals was of the opinion that the trial judge had invaded the province of the jury by deciding the *credibility* of Ms. Borner's testimony. The Court of Appeals felt that a mistrial should have been declared because of the problems concerning Ms. Borner's prior testimony. The prosecutor appealed that decision to the Michigan Supreme Court which reversed the Court of Appeals' decision.[5] The case was remanded for consideration of those issues not decided by the Court of Appeals, which subsequently affirmed the convictions. This writ followed.

II.

Petitioner Cooper argues that the trial judge first erred in refusing to accept his voluntary offer to plead guilty to second degree murder. The state has conceded as much, but argues that such error is no basis for a writ of habeas corpus. The trial judge considered himself without jurisdiction to accept a guilty plea to a lesser included offense over the objection to the prosecuting attorney. We find no constitutional deprivation there.

■ Although plea bargaining is a pervasive practice in the criminal justice system, defendants do not have a constitutional right to a plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). From what we can gather from petitioner's argument, his voluntary offer to plead guilty to second degree murder was an attempt to have the court drop the count of conspiracy to commit murder, in exchange. Absent a constitutional right to a bargain, we find no

5. In a *per curiam* opinion the Michigan Supreme Court agreed with the trial judge's conclusion that the prior transcript testimony of Ms. Borner could not be read to the jury because of competency questions raised by her testimony. The Supreme Court also concluded that her testimony would have not assisted or helped in deciding the critical issues of the case. *People v. Cooper*, 393 Mich. 263, 224 N.W.2d 287 (1977).

federal rights have been violated by the refusal of a trial judge to accept an attempt by a criminal defendant to bargain with the judge for a lesser included offense. See, e.g., *Engle v. Isaac*, —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). The Michigan Supreme Court has answered this contention most succinctly:

> The trial judge was of the opinion the pleas should be accepted, but refused to accept the pleas because he believed he lacked the power to do so over the objection of the prosecutor. [Petitioners] claim this refusal was reversible error. We disagree. The Michigan Supreme Court in the case of *Genesee County Prosecutor v. Genesee Circuit Judge* has recently held that in circumstances such as those in the present case, it is not error for a trial court to accept pleas to lesser included offenses.
>
> \*   \*   \*   \*   \*   \*
>
> Thus, while it was erroneous for the trial court to refuse defendants pleas such error is not a basis for reversing their subsequent convictions for first degree murder.

*People v. Ringstaff*, 53 Mich.App. 223, 225, 218 N.W.2d 859 (1974).

### III.

■ Both petitioners claim an abuse of the trial court's discretion in its denial of their motion for mistrial due to prosecutorial misconduct. The misconduct alleged is what petitioners have characterized as a highly prejudicial question asked by the prosecutor concerning the unavailability of a defense witness whom petitioner Cooper had sought to subpoena to testify but who could not be located.[6] Before an answer could be given to the question petitioner's

counsel objected, and the judge quickly sustained the objection. Also, a curative instruction was immediately given which directed the jury to disregard the question.

While the question may have been prejudicial, we find that the judge was not thereupon obliged to grant petitioner's motion for a mistrial.

■ The analysis employed on motion for mistrial is the same under both federal and Michigan law. As jeopardy attached when the jury was sworn, a trial judge may not declare a mistrial absent manifest necessity, *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). Such a necessity has been held to include the illness of a juror, counsel or the trial judge so serious that the trial cannot await recovery, *Illinois v. Summerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); the improper separation of the jury, or a statement by counsel or the trial judge which is so manifestly prejudicial as to prevent the defendant from obtaining a fair trial regardless of curative attempts, *United States v. Leonard*, 593 F.2d 951 (10th Cir. 1979); *People v. Leverette*, 84 Mich.App. 268, 269 N.W.2d 559 (1974); *People v. Green*, 74 Mich.App. 601, 254 N.W.2d 788, *clarified* 79 Mich.App. 186, 261 N.W.2d 253 (1977). If the judge finds that the ends of justice cannot thereafter be served without declaring a mistrial or that the trial proceedings are irrevocably flawed, the grant of such a motion is within the exercise of his or her discretion. *People v. Henley*, 26 Mich.App. 15, 182 N.W.2d 19 (1970); *People v. Gardner*, 37 Mich.App. 520, 195 N.W.2d 62 (1972).

Here, although the question can be characterized as prejudicial, this court cannot find and indeed the petitioners have ad-

---

**6.** Petitioner Cooper intended to call one witness for his defense, Shirley Mae Williams, who had testified in his first trial. His attorney delivered a properly prepared subpoena for Ms. Williams to the officer in charge of the case who attempted to serve her. To establish her unavailability and to allow the petitioner to read her prior testimony to the jury, the prosecutor moved to have Detective Irwin take the stand and testify as to his efforts to serve Ms. Williams. The following colloquy occurred:

Mr. Gilman: Are there any outstanding warrants for her arrest at the time?
Mr. Hardig: Objection, that is not material.
Mr. Gilman: It goes to availability, your Honor.
The Court: It is stricken, it is prejudicial. The jury should disregard it.
Mr. Gilman: I have no further questions.

vanced no reasons for claiming that the question was so seriously prejudicial as to render denial of such a motion a constitutional deprivation. The question was calculated to assist the judge in determining why the witness was unavailable. True, the question suggested the possibility of the witness' implication in criminal conduct. But before the question could be answered, defense counsel objected, the judge sustained the objection, and forthwith gave a curative instruction which adequately protected the petitioners. We find no error of constitutional dimensions in the refusal of the trial judge to declare a mistrial because of the prosecutor's question.

### IV.

Petitioners further allege that the order empaneling the grand jury which indicted them was so limited as to render their indictments impossible. On this point they contend that the state failed to follow its own procedure of providing standards governing the scope of the grand jury's inquiry, and that this failure renders the indictment fatally flawed. *People v. Diponio*, 20 Mich. App. 658, 174 N.W.2d 572 (1969). We disagree.

■ The petitioners have confused the requirements applicable to two different types of grand juries: the general grand jury and the one-man grand jury. On the latter proceeding, Michigan law requires that the individual grand juror be specifically charged as to the scope of his inquiry in investigating allegations of criminality. M.C.L.A. § 767.3. The Legislature found such a limiting provision to be necessary and appropriate in a statute which otherwise rests enormous discretion upon a single individual. *In re Colascasides*, 379 Mich. 69, 150 N.W.2d 1 (1967).

The petitioners, however, were indicted by a citizens grand jury, whose power of inquiry into criminal activity is not so limited. M.C.L.A. § 767.7.[7] There is no limiting

provision in the statute under which a citizens grand jury is charged. *People v. Lay*, 193 Mich. 476, 160 N.W. 467 (1916). They are free to investigate whatever criminal activity they have reasonable cause to believe has occurred.

■ Furthermore, habeas corpus relief can be invoked with respect to indictments returned by grand juries only where the indictment is so defective that a valid conviction could under no circumstances result from facts proved thereunder. *Johnson v. Beto*, 383 F.2d 197 (5th Cir. 1967), *cert. den.* 393 U.S. 868, 89 S.Ct. 153, 21 L.Ed.2d 136, *reh. den.* 393 U.S. 992, 89 S.Ct. 455, 21 L.Ed.2d 458 (1968).

### V.

■ Petitioners next claim that it was error for the trial judge to have failed to charge the petit jury on the lesser included offense of second degree murder despite their insistence at trial that he not so charge the jury. It is well settled, however, that the failure to give a lesser included instruction is not cognizable in a habeas corpus action. *Pilon v. Bordenkircher*, 593 F.2d 264 (6th Cir. 1979). See also, *Henderson v. Kibbe*, 431 U.S. 145, 154–155, 97 S.Ct. 1730, 1736–1737, 52 L.Ed.2d 203 (1977) ("It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.") The rationale of the court in *Henderson* seems particularly appropriate where the petitioners expressly resisted the court's initial plan to charge the jury on the lesser included offense. Their actions in insisting that he not so charge the jury constitute a default from which this court may not provide habeas corpus relief, absent some showing of actual prejudice resulting from the errors of which the petitioners complain. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Engle v. Isaac*, —— U.S. ——, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). It is

---

7. M.C.L.A. § 767.7 provides:
Grand juries shall not hereafter be drawn, summoned, or required to attend at the sittings of any court within this state, as provid-

ed by law, unless the judge thereof shall so direct by writing under his hand, and filing with the clerk of the court.

apparent that the petitioners gambled that by having the jury consider only the alternatives of a conviction for first degree murder or acquittal, the latter would be chosen. Petitioners complain of error now that their calculated gamble has failed. *Wainwright v. Sykes, supra,* at 89–90, 97 S.Ct. at 2507–2508; *Engle v. Isaac, supra,* at —— fn. 34, 102 S.Ct. at 1572 fn. 34. We cannot grant habeas corpus relief on that basis.

### VI.

■ Petitioners further contend that they could not be found guilty of conspiracy to commit murder when three other alleged co-conspirators were found not guilty. The Michigan Court of Appeals has answered the query most cogently:

> The acquittal of three men accused of conspiracy does not diminish the capability of the [petitioners] to conspire to commit murder.

Petitioners have failed to set forth any reasons for this court to deviate from that holding.

### VII.

■ Petitioners next argue that it was constitutional error for the trial judge to exclude the favorable trial transcript testimony of a witness who died prior to their second trial. Generally, however, the receipt or rejection of evidence is not cognizable in an application for habeas corpus relief. *Burks v. Egeler,* 512 F.2d 221 (6th Cir. 1975). Furthermore, such rulings on admissibility of evidence are within the discretion of the judge and that discretion is not reviewable in a federal habeas corpus action. *Oliphant v. Koehler,* 594 F.2d 547 (6th Cir. 1979); *Gemmel v. Buchkoe,* 358 F.2d 338 (6th Cir. 1966), *cert. den.* 385 U.S. 962, 87 S.Ct. 402, 17 L.Ed.2d 306, *reh. den.* 385 U.S. 1021, 87 S.Ct. 723, 17 L.Ed.2d 561.

To avoid the application of these rules, petitioners argue that the admission of the evidence would have led to a different verdict, and that the trial judge entered the domain of the jury in deciding to withhold the testimony from consideration by the jury. We disagree.

■ The Michigan Supreme Court found, after a review of both transcripts, that the trial judge was correct in his ruling that the witness was not competent to testify and in excluding the transcript both found that the nature of her testimony was contradictory, and that it would not have aided in a determination of the critical issue posed by the case, which was whether the petitioners were guilty of first degree murder or not. The Supreme Court specifically found that the evidence had no exculpatory value.

Even assuming error in the trial court's refusal to read the transcript testimony of Ms. Borner, that error was harmless. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–231, 11 L.Ed.2d 171 (1963). In *Fahy,* the Supreme Court noted that reversal of a conviction would be necessary if there were a reasonable possibility that the evidence complained of contributed to a conviction. In the case *sub judice,* the question therefore becomes whether the admission of Ms. Borner's testimony would have led to a different verdict. After full review of the transcript of the petitioners' trial, this court is convinced that Ms. Borner's testimony was completely neutral in effect and could not reasonably have led to a different verdict. The principle evidence against the petitioners came from another co-conspirator, Alvin Johnson. It was Johnson's testimony which placed the petitioners at the scene of the crime. Johnson testified that the petitioners shot Eldridge, and that he and Logan simply served as look-outs while the crime was being committed. The only question for the jury to decide, then, was whether Johnson was a credible witness. Ms. Borner's testimony, at best, only indicated that she could not identify the individuals who were in her home after the shooting occurred. We also note the fact that the petitioners were convicted with the benefit of her testimony at their prior trials. Accordingly, habeas corpus relief on this issue is not warranted.

## VIII.

Petitioners finally contend that the trial judge abused his discretion in refusing to grant a motion to sever their trials from that of Logan. A motion to sever criminal trials rests within the sound discretion of the trial judge. The mere fact that co-defendants may attempt to blame each other does not require a severance. *United States v. Vinson*, 606 F.2d 149 (6th Cir. 1979), *cert. den.* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756; *Thompson v. United States*, 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 319 (1980). The joint trials of petitioners and Logan was consistent with the general rule that persons charged with a conspiracy should be tried together, particularly where the proof of charges against all defendants is based upon the same evidence and acts. *United States v. Boyd*, 610 F.2d 521 (7th Cir. 1979). The mere fact that there is hostility amongst the defenses of the defendants or that one defendant may try to save himself at the expense of another is not sufficient ground to require separate trials.

IT IS THEREFORE ORDERED that petitioners' request for habeas corpus relief be and it hereby is denied.

IT IS FURTHER ORDERED that judgment be entered in favor of the respondents.

IT IS SO ORDERED.