PEOPLE v. WOLKE.

1. CRIMINAL LAW—OBJECTIONABLE TESTIMONY—EVIDENCE.
    The court will presume the jury will consider only the testimony permitted by the court to stand and will hold that instructions to disregard objectionable evidence cure the error where the objectionable evidence was introduced inadvertently, but the court is more likely to hold that the stain of the evidence remains in spite of instructions to disregard where the evidence is inherently prejudicial or inflammatory.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 890; 53 Am Jur, Trial § 671.
[2] 5 Am Jur 2d, Appeal and Error § 806.

2. SAME—ABORTION—EVIDENCE—TELEPHONE COMPANY RECORDS.

Improper admission of testimony of manager of telephone company reading company records, made by another person, in trial for conspiracy to commit abortion, that certain calls were made from telephones belonging to complaining witness and a conspirator to certain numbers on certain relevant dates *held*, not reversible error where the records did not place before the jury any evidence not already in the record, but merely corroborated the testimony of the complaining witness, the trial judge instructed the jury 3 different times to disregard the testimony, the matter in the records was not inherently inadmissible but only objectionable because introduced by the wrong witness, the defendant was not mentioned in the objectionable testimony, and no prejudicial error resulted (CL 1948, § 750.14; CLS 1961, § 750.505).

Appeal from Kent; Hoffius (Stuart), J. Submitted Division 3 January 8, 1968, at Grand Rapids. (Docket No. 2,995.) Decided March 29, 1968.

John C. Wolke was convicted of conspiracy to commit abortion. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *S. J. Venema,* Assistant Prosecuting Attorney, for the people.

*Louis John Educato,* for defendant.

J. W. FITZGERALD, P. J. Four persons were charged with conspiracy to commit abortion* in connection with a series of attempted abortions upon one Georgette Vander Bos. One codefendant was separately tried and convicted prior to the trial here in issue; see *People* v. *Wellman* (1967), 6 Mich App 573. Another codefendant, Charlotte Bitker, could not be located at the time of trial. Appellant Wolke and codefendant David Paschall

* Abortion: CL 1948, § 750.14 (Stat Ann 1962 Rev § 28.204); conspiracy: CLS 1961, § 750.505 (Stat Ann 1954 Rev § 28.773).

were jointly tried and convicted by jury verdict in
Kent county circuit court. The 3-day trial was con-
cluded on June 7, 1965, and Wolke was sentenced
to 3 to 5 years. A motion for new trial was denied
on January 7, 1966, and appeal brought.

The issue on appeal, as stated by defendant,
asks, "Was appellant denied a fair trial because
the trial court admitted into evidence certain tele-
phone company records over objection of appel-
lant's counsel?"

Defendant's statement of the issue is somewhat
misleading in that it gives the impression that the
court permitted the jury to consider the disputed
evidence and ignores the attempts by the trial court
to correct its initial error by striking the evidence
and instructing the jury 3 different times to disre-
gard it. The true question is whether the objec-
tionable evidence denied defendant a fair trial de-
spite the court's corrective actions.

At the trial, complainant Georgette Vander Bos
testified substantially as follows: Dr. Wellman
gave her a phone number to call in Detroit to
arrange an abortion. She spoke to Bitker and
Paschall at that number, and at others subsequently
given her by them, and arranged, through them,
an abortion. Defendant Wolke, whom Bitker and
Paschall called "the doctor", performed abortion
attempts upon her as a result of the telephone calls.

In the course of the trial, the people called the
manager of the telephone company serving Grand
Rapids. Reading from company records, he testi-
fied that calls were made from the telephones of
Mrs. Vander Bos and Dr. Wellman to the numbers
Mrs. Vander Bos had testified she called to speak
with Bitker and Paschall. The defendants objected
on the ground that the manager had not himself
prepared the records and they were therefore hear-
say. The court overruled the objection and held

the records admissible under CLS 1961, § 600.2146 (Stat Ann 1962 Rev § 27A.2146), as records made in the usual course of business.

Later that same day, the court's attention was directed to *People* v. *Lewis* (1940), 294 Mich 684, which held the statute relative to the admissibility of business records inapplicable to criminal cases. The court then reversed its prior ruling and instructed the jury to "completely disregard" both the records and the testimony relative thereto. In its charge, the court twice instructed the jury to disregard stricken testimony, once in general terms and once with specific reference to the telephone company records.

A multitude of cases deal with objectionable evidence and instructions to disregard. The majority of these cases find the error cured or not cured, giving little rationale for the result reached. Those that do attempt to explain the result offer conflicting explanations to match their conflicting results. Those cases holding that instructions to disregard could not cure the error employ an "ink-blot" analogy; those holding the error cured by the instructions rely instead on the "dutiful jury" rule.

*People* v. *Evans* (1888), 72 Mich 367, is an example of an ink-blot case. In holding that the prosecutor's comment on the defendant's failure to testify was not cured by the court's instruction to the jury to disregard the comment, the court quoted *Quinn* v. *People* (1888), 123 Ill 133 (15 NE 46), to the effect that it is idle to talk of removing the effect of the argument from the minds of the jurors, for:

"As well might one attempt to brush off with the hand a stain of ink from a piece of white linen. One, in the very nature of things, is just as impossible as the other." (72 Mich 367, 383.)

Another case also involving improper comments by a prosecutor is *People* v. *Kolowich* (1933), 262 Mich 137, 151:

"It is true that the trial judge expressly instructed the jury to disregard the remarks, but the damage was done. An ink spot may be blotted out in part, but the stain still remains."

In seemingly direct contrast are the dutiful jury cases. *People* v. *Gregory* (1902), 130 Mich 522, 525, involving stricken hearsay testimony, states:

"We cannot assume that the jury were so forgetful of their duty as to not disregard this testimony after it was stricken out."

What began as an assumption soon grew to become a presumption in *People* v. *Droste* (1910), 160 Mich 66, 77:

"It must be presumed that the jury considers only the testimony permitted by the court to stand."

This language was relied on in *People* v. *Page* (1917), 198 Mich 524, 539, a case wherein the prosecutor managed to get in testimony that the defendant had admitted the commission of other offenses for which he had never been arrested. Other references to the presumption that jurors are mindful of their duties may be found in *People* v. *Burnstein* (1933), 261 Mich 534, 538, and *People* v. *Logie* (1948), 321 Mich 303, 308, 309.

Although seldom verbalized, the choice of which standard to apply seems to depend upon 2 factors. The primary factor is the degree of potential prejudice generated by the objectionable evidence. The more inherently prejudicial or inflammatory the evidence in question, the more likely will the inkblot analogy be invoked. The other factor, of secondary importance, is the circumstances surrounding introduction. The dutiful jury rule is more

often applied where the objectionable evidence is introduced inadvertently than where it appears to have been deliberately injected. Both factors are given recognition in 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 720, that:

"When objectionable testimony which was *not deliberately injected* into the case is promptly purged from the record and the jury instructed to disregard it, the irregularity should not be held to constitute reversible error *in the absence of persuasive showing of prejudice.*" (Emphasis supplied.)

To what degree, then, are these factors present in the instant case? The objectionable evidence consisted of telephone company records that certain calls had been made from phones belonging to Mrs. Vander Bos and Dr. Wellman to certain numbers on certain relevant dates. The evidence was inadmissible because, unless the person who actually prepared the records was called to testify, they were hearsay. They were not inadmissible *per se,* but only inadmissible because the person who prepared them was not called to testify. They *would have been admissible* had such person been available for cross-examination. Equally important, the records did not place before the jury any evidence not already in the record, but merely corroborated the testimony of Mrs. Vander Bos that she and Dr. Wellman had made such calls. It is therefore difficult to infer prejudice or malevolent motive from the introduction of evidence of this nature.

Nevertheless, the very elements considered above were held to command reversal in *People* v. *Lewis, supra.* That case involved introduction of hospital records without calling the person who actually made them. The Supreme Court held that inability

to cross-examine the maker of the records violated the defendant's constitutional right to be confronted by the witnesses against him. Because the records corroborated the testimony of the complaining witness, they were held not only inadmissible, but "highly prejudicial" and "damaging" (294 Mich 688).

Granting that the record of telephone calls should not have been admitted under *Lewis,* we must return to the record to see whether the error is such as would produce prejudice to a fair trial.

We are impressed with these fundamental differences between *Lewis* and the instant case:

(1) The damaging testimony in *Lewis* was considered by the jury with no instruction to disregard offered by the court.

(2) Nowhere in the entire testimony of the telephone company manager is the name of defendant Wolke mentioned.

(3) The fact of the telephone calls was established by other competent testimony, *i.e.,* that of the complaining witness, Georgette Vander Bos. As in (2) above, at no point did she testify that she had telephoned the defendant.

Sufficient other competent evidence established the fact of the telephone calls. This, coupled with unmistakable instructions to disregard, brings the complained of error within the purview of *People* v. *Kregger* (1953), 335 Mich 457, holding that it is not reversible error where inadmissible statements were but corroborative of other properly admitted evidence.

Accordingly, we hold that though the telephone company manager's testimony was improperly admitted, prejudicial error did not result to defendant.

Affirmed.

BURNS and NEAL FITZGERALD, JJ., concurred.