PEOPLE *v* GARDNER

1. CRIMINAL LAW — JEOPARDY — ATTACHMENT OF JEOPARDY — DISCHARGE OF JURY.

> A criminal defendant is placed in jeopardy once the jury is impaneled and sworn and the defendant has a right to have his guilt weighed finally by that tribunal; if the jury is discharged without legal justification or defendant's consent before his guilt or innocence has been determined, the discharge is equivalent to an acquittal and bars retrial in most cases.

2. CRIMINAL LAW—JEOPARDY—MISTRIAL DECLARED SUA SPONTE.

> A trial judge may in certain circumstances declare *sua sponte* a mistrial without the Jeopardy Clause becoming applicable.

3. CRIMINAL LAW — JEOPARDY — MISTRIAL DECLARED SUA SPONTE — NECESSITY OF MISTRIAL.

> That a mistrial was declared *sua sponte* for the benefit of defendant is not enough to prevent the Jeopardy Clause from being applicable; instead, the appellate court must look at the circumstances of the case to determine whether the trial judge

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 175 *et seq.*
[2–4] 21 Am Jur 2d, Criminal Law §§ 180, 195.

correctly determined, in a scrupulous exercise of judicial discretion, that a manifest necessity prevented the ends of public justice from being served by a continuation of the proceedings.

4. CRIMINAL LAW—JEOPARDY—MISTRIAL DECLARED SUA SPONTE—NECESSITY OF MISTRIAL.

   Trial judge's *sua sponte* declaring a mistrial when a police officer testified that defendant, when he turned himself in, was accompanied by a parole officer because the trial judge believed that the implication of a prior conviction constituted reversible error not curable by an instruction barred the defendant's retrial because of the Jeopardy Clause where the defendant did not move for a mistrial and the court did not consult with the defendant before declaring a mistrial, because the trial judge was not aborting a proceeding which if it had led to defendant's conviction would have necessarily resulted in reversal on appeal; if the defendant, because of trial strategy, had determined to let the error pass without objection, he would not have found an appellate court receptive to any claimed error on appeal.

Appeal from Recorder's Court of Detroit, Elvin Davenport, J. Submitted Division 1 November 8, 1971, at Detroit. (Docket No. 9716.) Decided January 17, 1972. Leave to appeal denied, 387 Mich 772.

Henry Gardner was charged with first-degree murder. Defendant's motion to dismiss the information denied. Defendant appeals by leave granted. Reversed and defendant ordered discharged.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Gus Cifelli* (*Kenneth A. Webb,* of counsel), for defendant on appeal.

Before: Lesinski, C. J., and Holbrook and Van Valkenburg,* JJ.

Lesinski, C. J. Defendant Henry Gardner's motion to dismiss the information charging him with first-degree murder, MCLA 750.316; MSA 28.548, was denied by the trial court. This Court stayed proceedings in the court below on this charge, and granted defendant leave to appeal the trial court's denial of his motion.

Defendant was first tried by a jury on this charge along with two other men. At that trial, presided over by Detroit Recorder's Court Judge Elvin Davenport, defense counsel informed the jury that defendant had been on parole when the killing occurred. Defendant's parole officer, William Richardson, was called as a defense witness at that trial. The parole officer testified that defendant "was making good progress, no arrests and no contacts with the authorities". He stated that defendant had come to him and told him of defendant's part in the activities surrounding the killing. Further, defendant asked Mr. Richardson to contact the two police officers in charge of the case so that defendant could explain his version of the incident to them.

The trial court concluded this first proceeding by declaring a mistrial, when the jury was unable to reach a verdict after five days of deliberation. Subsequent to that trial, the two codefendants pled guilty to reduced charges. Defendant proceeded to trial a second time alone.

During the tenth day of defendant's second jury trial, also presided over by Judge Davenport, the prosecution called the arresting officer to testify.

---

* Former Circuit Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

The following testimony was elicited from him by the prosecutor on direct examination:

"*Mr. Gibbs:* Did you have occasion in the month of January of 1969 to arrest Henry Gardner?

\* \* \*

"*Police Officer:* Yes, I did.
"*Mr. Gibbs:* And that took place where, that arrest?
"*Police Officer:* At the fourth precinct station, Fort and Green.
"*Mr. Gibbs:* That arrest was made by surrender of the witness?
"*Police Officer:* Yes, it was.
"*Mr. Gibbs:* He came into the precinct?
"*Police Officer:* Yes, he did."

The arresting officer was then cross-examined by defense counsel:

"*Mr. Cifelli:* And your first contact with Mr. Gardner was at the police station?
"*Police Officer:* Yes, sir.
"*Mr. Cifelli:* There at the police station, was this in the office?
"*Police Officer:* Yes sir, it was.
"*Mr. Cifelli:* He identified himself as Henry Gardner?
"*Police Officer:* Yes sir, he did.
"*Mr. Cifelli:* Did he inform you that he had knowledge that the Detroit Police Department was looking for him?
"*Police Officer:* Yes sir, he did.
"*Mr. Cifelli:* I have no further questions."

The prosecutor then asked the first question of redirect examination:

"*Mr. Gibbs:* Was he in custody of a probation officer at that time?

"*Police Officer:* He was accompanied by Parole Officer Richardson.

"*The Court:* Excuse the jury."

Immediately subsequent to that, the trial judge, on his own motion, declared a mistrial.

Defendant urges that to retry him for first degree murder, in light of the trial court's *sua sponte* declaration of a mistrial at the second proceeding, would be to place him twice in jeopardy for the same offense in violation of the Double Jeopardy Clause of the United States and Michigan Constitutions, US Const, Am V;[1] Michigan Const 1963, art 1, § 15. Thus, this Court is confronted again with the difficult question of under what circumstances may a defendant be retried, after a trial judge has declared a mistrial on his own motion.

# I

The United States Supreme Court has often discussed the rationale behind the Double Jeopardy Clause. Any examination of the constitutional right cannot be divorced from the considerations which led to its conception.

The Supreme Court stated in *Green* v *United States,* 355 US 184, 187–188; 78 S Ct 221, 223; 2 L Ed 2d 199, 204 (1957), that:

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the state with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment,

---

[1] The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution was held applicable to the states in *Benton* v *Maryland,* 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

Mr. Justice Harlan, writing for the Court in *United States* v *Jorn*, 400 US 470, 479; 91 S Ct 547, 554; 27 L Ed 2d 543, 553 (1971),[2] the Supreme Court's latest pronouncement on double jeopardy, explained the provision in this manner:

"The Fifth Amendment's prohibition against placing a defendant 'twice in jeopardy' represents a constitutional policy of finality for the defendant's benefit in Federal criminal proceedings. A power in government to subject the individual to repeated prosecutions for the same offense would cut deeply into the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial. And society's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws."

This strong policy has led both the United States Supreme Court and Michigan Courts to declare that a defendant is placed in jeopardy once the jury is impaneled and sworn. *Jorn, supra,* 400 US at 479;

---

[2] Justice Harlan's opinion for the Court was signed by Chief Justice Burger, Mr. Justice Douglas, and Mr. Justice Marshall. Mr. Justice Black and Mr. Justice Brennan did not join in the opinion of the Court because they took an even more extreme position, believing that the Court had no jurisdiction to hear the appeal of the case brought by the government. (See part I of the majority opinion.) It was noted that "in view of a decision by a majority of the Court to reach the merits, they join the judgment of the Court". *United States* v *Jorn*, 400 US 470, 488; 91 S Ct 547, 558; 27 L Ed 2d 543, 558 (1971). The dissent, signed by Mr. Justice Stewart, Mr. Justice White, and Mr. Justice Blackmun, was based almost entirely on *Gori* v *United States*, 367 US 364; 81 S Ct 1523; 6 L Ed 2d 901 (1961).

91 S Ct at 554; 27 L Ed 2d at 553; *People* v *Tillard,* 318 Mich 619 (1947); *People* v *Henley,* 26 Mich App 15 (1970). Once a defendant has been placed in jeopardy, he has a right to have his guilt weighed finally by that tribunal. If the jury is discharged without legal justification or defendant's consent before his guilt or innocence has been determined, the discharge "is equivalent to an acquittal and bars retrial". *Henley, supra,* at 27. See, also, *People* v *Schepps,* 231 Mich 260 (1925).

This is not to say that any declaration by the trial court of a mistrial without defendant's consent bars all retrial, however. There are well-recognized exceptions to this rule. The classic statement on this subject, recently employed once again by the United States Supreme Court in *Jorn, supra,* was authored by Mr. Justice Story in *United States* v *Perez,* 22 US (9 Wheat) 579; 6 L Ed 165 (1824). The *Perez* holding allowed a defendant in a capital case to be retried after the trial court, *sua sponte,* declared a mistrial because the jury was unable to reach a verdict. The Court there stated:

"We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject, and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and *for very plain and obvious causes;* and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the secur-

ity which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the of the judges, under their oaths of office." 22 US (9 Wheat) at 580; 6 L Ed at 165. (Emphasis supplied.)

The United States Supreme Court has applied the *Perez* standard since its formulation as the standard for determining whether the Double Jeopardy Clause bars retrial, after the trial judge's declaration of a mistrial without the defendant's consent. *Jorn, supra,* 400 US at 480, 481; 91 S Ct at 555; 27 L Ed at 554. Michigan courts have also utilized the *Perez* standard. See *In re Earle,* 316 Mich 295 (1946); *People v Schepps, supra; People v Sharp,* 163 Mich 79 (1910); *In re Ascher,* 130 Mich 540 (1902); *People v Henley, supra; People v Anglin,* 6 Mich App 666 (1967).

Thus, there are circumstances in which, because of manifest necessity, it is proper for the trial judge to declare a mistrial. Examples of situations where such a manifest necessity has been found to exist include cases where the jury is unable to agree;[3] where the tactical situation of an army in the field dictates the dismissal of a court-martial;[4] where the trial judge discovers that one or more jurors might be biased;[5] and where a juror, or defendant becomes

---

[3] In addition to *United States v Perez,* 22 US (9 Wheat) 579; 6 L Ed 165 (1824), on this issue, see *Logan v United States,* 144 US 263; 12 S Ct 617; 36 L Ed 429 (1892); *Dreyer v Illinois,* 187 US 71; 23 S Ct 28; 47 L Ed 79 (1902); *Moss v Glenn,* 189 US 506; 23 S Ct 851; 47 L Ed 921 (1903); and *Keerl v Montana,* 213 US 135; 29 S Ct 469; 53 L Ed 734 (1909). The latter three cases are based on Fourteenth Amendment due process standards, since the Double Jeopardy Clause had not yet been applied directly to the states, but are still instructive on this point.

[4] *Wade v Hunter,* 336 US 684; 69 S Ct 834; 93 L Ed 974 (1949).

[5] *Simmons v United States,* 142 US 148; 12 S Ct 171; 35 L Ed 968 (1891); *Thompson v United States,* 155 US 271; 15 S Ct 73; 39 L Ed 146 (1894).

ill during trial, making his continued presence impossible.[6] In these circumstances, "a defendant's valued right to have his trial completed by a particular tribunal must * * * be subordinated to the public's interest in fair trials designed to end in just judgments". *Wade* v *Hunter,* 336 US 684, 689; 69 S Ct 834, 837; 93 L Ed 974, 978 (1949).

The exceptions to the applicability of the Double Jeopardy Clause had been narrowly interpreted until the case of *Gori* v *United States,* 367 US 364; 81 S Ct 1523; 6 L Ed 2d 901 (1961). Mr. Justice Douglas, dissenting in the *Gori* opinion, suggested that previous exceptions had been limited to "breakdown[s] in judicial machinery". *Gori, supra,* 367 US at 372; 81 S Ct at 1528; 6 L Ed 2d at 907 (Douglas, J., *dissenting*). In *Gori,* the Court affirmed defendant's conviction on retrial, although the trial judge had declared a mistrial in a prior proceeding on his own motion, apparently because he believed the prosecutor intended to inform the jury of other crimes committed by the accused. The Court noted that the mistrial had been declared for defendant's benefit. It stated: "Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial". 367 US at 369; 81 S Ct at 1527; 6 L Ed 2d at 905.

If the *Gori* holding remained intact, we would feel constrained to adopt its rationale in the instant case. In *Henley, supra,* a panel of this Court on which this writer participated followed the result which it felt

---

[6] *United States* v *Potash,* 118 F2d 54 (CA2, 1941), *cert den* 313 US 584; 61 S Ct 1103; 85 L Ed 1540 (illness of juror); and *Loux* v *United States,* 389 F2d 911 (CA9, 1968); *United States* v *Stein,* 140 F Supp 761 (SD NY, 1956) (illness of defendant). It is not clear whether the illness of a prosecutor would likewise be termed a "manifest necessity". See *United States* v *Watson* (D NY), 3 Ben 1, F Cas No 16651, cited with approval in *Downum* v *United States,* 372 US 734; 83 S Ct 1033; 10 L Ed 2d 100 (1963).

was dictated by *Gori*.[7] After defendant's lawyer in *Henley* withdrew from the case after an apparent disagreement over fees with defendant, the trial judge declared a mistrial, in order that new counsel could be obtained for defendant. The dismissal followed what the Court termed "repeated efforts on the part of defendant Henley to avoid trial on the merits", *Henley, supra,* at 25, undertaken with "an apparent intent on defendant's part to frustrate the judicial process". *Henley,* at 33.

The *Gori* opinion is not the last statement by the United States Supreme Court, however. *United States* v *Jorn, supra,* handed down on January 25, 1971, discusses this complex problem and criticizes the *Gori* rationale. In *Jorn,* defendant had been charged with willfully assisting in the preparation of fraudulent income tax returns. Because the trial court felt that five of the prosecution witnesses, all taxpayers whom defendant allegedly aided in preparing false returns, had not been adequately warned of their rights against self-incrimination, it declared a mistrial on its own motion so that the witnesses could consult with attorneys before testifying. In an opinion written by Mr. Justice Harlan, the Court held that defendant could not be retried on the basis of the Double Jeopardy Clause.

Referring to the "benefit" rule, the *Jorn* Court stated:

"Further, we thing that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision. Reprosecution after a mistrial has unnecessarily been de-

---

[7] On the other hand, panels of this Court in *People* v *Carlton Brown,* 23 Mich App 528 (1970), and *People* v *Iaconis,* 29 Mich App 443 (1971), appear to have disregarded the *Gori* test.

clared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." 400 US at 483; 91 S Ct at 556; 27 L Ed 2d at 555.

In addition, the Court rejected the prosecution's contention "that double jeopardy policies are confined to prevention of prosecutorial or judicial overreaching". 400 US at 484; 91 S Ct at 556–557; 27 L Ed 2d at 556.

The Court stated that, in the absence of a motion by the defendant for a mistrial which would usually eliminate the bar to retrial,

"The *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." 400 US at 485; 91 S Ct at 557; 27 L Ed 2d at 557.

The *Jorn* Court emphasized repeatedly defendant's interest in the determination of whether the trial should be aborted in the face of a situation which might merit the declaration of a mistrial. Although the trial judge must still balance the interests of defendant and the prosecution,

"Yet, in the final analysis, the judge must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate." 400 US at 486; 91 S Ct at 558; 27 L Ed 2d at 557.

In light of the *Jorn* decision, then, we are no longer constrained to follow *Gori*. It is not enough

that a mistrial in the instant case was declared for the benefit of defendant. We must, instead, look at the circumstances of the case to determine whether the trial judge correctly determined, in a "scrupulous exercise of judicial discretion", that a manifest necessity prevented the ends of public justice from being served by a continuation of the proceeding.

## II

Immediately after the trial judge excused the jury in this case, he made the following statement:

"*The Court:* This is what comes of nit-picking. He has said he was in the company of a parole officer. Now, the jury will know he is on parole. How am I going to clean that up? I don't know why you waste time on it anyway. I really don't. He said that he was in the company of a parole officer. He wasn't going to show that he came in voluntarily. What difference did it make? I don't know how I can correct this.

"*Mr. Gibbs* [*assistant prosecuting attorney*]: Your Honor, isn't it possible, that—

"*The Court:* I am going to conduct an examination now."

An examination of the jury revealed that at least one juror could accurately relate the questioned testimony. Without inviting comment from either counsel, the judge then stated:

"*The Court:* All right, a mistrial is declared and you are excused from further service in this case. This is error that cannot be cured. Now you know he is on parole. * * *

"All right. You will return to the jurors' assembly room for further assignment.

"All right. That is all."

A careful study of the law in Michigan reveals that the trial judge was correct in recognizing that a potentially serious problem had arisen.

The general rule in this state is that evidence of defendant's former convictions or offenses is inadmissible, when defendant does not take the stand in his own behalf, unless the "evidence is material and relevant to the issue being tried". *People* v *Fleish*, 321 Mich 443, 461 (1948). See, also, *People* v *Greenway*, 365 Mich 547 (1962). There is no contention in this case that evidence of defendant's past offenses was relevant to the issue being tried.

Defendant and the prosecution, in their briefs on appeal, devote much argument to whether the prosecutor's question and the arresting officer's answer at trial do, in fact, constitute a sufficient basis for the declaration of a mistrial. Defendant cites *Fleish, supra,* for the proposition that such testimony could have been rendered harmless by a corrective instruction.[8] In the *Fleish* case, a witness had responded, "Well, he just told me his experience at Alcatraz", in reply to a general question from the prosecutor, and defendant moved for a mistrial. The trial court denied defendant's motion, issuing instead a corrective instruction. The Michigan Supreme Court upheld the denial of the mistrial motion, noting that there was no indication that the prosecutor deliberately injected the improper testimony into the case. The Court stated:

"Inadvertent irregularities of this character are bound to occur in the course of prolonged, hotly-contested trials, and when, as in the instant case, the

---

[8] For a discussion of when it is proper to cure an error with corrective instruction instead of by the declaration of a mistrial, see *People* v *Wolke*, 10 Mich App 582 (1968); and *People* v *Booker T Smith*, 21 Mich App 99 (1970). The United States Supreme Court addressed the problem in *Bruton* v *United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968).

objectionable testimony is purged from the record by the trial court, the irregularity should not be held to constitute reversible error in the absence of a persuasive showing of prejudice." *Fleish* at 463.

In *Greenway, supra,* in response to the question "Where did you meet William Greenway (defendant)?" the witness answered, "In the Arkansas prison". The trial court's denial of defendant's motion for a mistrial was held to be reversible error. The Court stated that the answer by the witness, "which the prosecution clearly anticipated or hoped for, was calculated to prejudice the minds of the jurors against the defendant". *Greenway,* at 551. In the case of *People v Camel,* 11 Mich App 219 (1968), we followed *Greenway* in holding that the trial court should have granted defendant's motion for a mistrial after a witness said defendant had "stated that he had got out of Jackson prison". *Camel, supra,* at 221. The Court ruled that "the objectionable response by this witness could have been anticipated". *Camel* at 222.

A review of recent decisions in this Court concerning this problem reveals two classes of cases. One line of authority holds that the trial court erred in denying defendant's motion for a mistrial. *People v Sullivan,* 32 Mich App 181 (1971); *People v Matthews,* 17 Mich App 48 (1969). Other decisions have ruled that there was no need to grant a mistrial, when the trial judge gave corrective instructions. *People v Solis,* 32 Mich App 191 (1971); *People v Gibson,* 25 Mich App 622 (1970); *People v Oscar Lee Smith,* 22 Mich App 133 (1970).

In *Solis, supra,* it was not necessary to grant a mistrial when a witness referred to defendant's "prior trouble and probation" in an unresponsive answer to the prosecutor's question. The Court

noted that no emphasis was placed on the testimony by the prosecutor. In upholding the trial court's failure to grant a mistrial in *Gibson, supra,* this Court noted:

"After reviewing the record, we are satisfied that the witness's remark was not anticipated or pressed for by the prosecutor. Under such circumstances, a new trial need not result where, as here, the trial court applies the proper corrective." 25 Mich App 623.

We do not find it necessary to determine whether the trial judge should have granted a mistrial or cured the error with an instruction, had defendant moved here for a mistrial. It is significant that defendant, unlike defendants in *Camel, Fleish, Greenway, Sullivan, Matthews, Solis,* and *Gibson, supra,* did not move for a mistrial.[9]

This analysis of the propriety of the trial court's action in declaring a mistrial in the instant case leads us to one definite conclusion: if the defendant, because of trial strategy, had determined to let the error pass without objection, he would not have found this Court receptive to any claimed error on appeal. By declaring a mistrial, then, the judge was not aborting a proceeding which, if it had led to defendant's conviction, would have necessarily resulted in reversal on appeal.

### III

It is apparent from the preceding discussion that Judge Davenport declared his mistrial out of a concern for a fair trial for defendant. However,

---

[9] Defendant, in *People v Oscar Lee Smith,* 22 Mich App 133 (1970), requested a curative instruction. Defendant, in this case, failed to adopt this course, either.

that factor is no longer determinative of a double jeopardy question after *Jorn, supra.*

It is also apparent that Judge Davenport's decision to declare a mistrial could not be judged as incorrect, if defendant had moved for a mistrial, because of the state of the law in this area.

The prosecution in this case, already in its tenth day of trial, was not prejudiced by the offensive matter that precipitated the mistrial. At the prior trial which also ended in a mistrial, defendant had volunteered the information that he was on parole. He sought to establish his recent conduct and the fact that he came to the police voluntarily through testimony of his parole officer. We have no way of knowing if defendant would have voluntarily done so again. However, even if defendant was not going to make use of the parole officer's testimony at this trial and was entitled to move for a mistrial and have that motion granted, he may have been satisfied with the composition of the jury or his chances for acquittal in the trial which was in its tenth day. He may have felt such considerations outweighed the prejudicial effects of the prosecutor's remarks, and preferred a curative instruction rather than the declaration of a mistrial. On the other hand, defendant may have indicated his approval of a mistrial declaration, which approval would, in most situations, "remove any barrier to reprosecution". *Jorn, supra,* 400 US at 485; 91 S Ct at 557; 27 L Ed 2d at 557.

We believe that a trial court's declaration, *sua sponte,* of a mistrial cannot be grounded on "a scrupulous exercise of judicial discretion" where under the circumstances of this case it fails to consult defendant before summarily aborting the proceedings. In cases involving breakdowns in the judicial machinery, the trial judge is particularly well-suited

to make a determination without consulting the parties. Such is not the case here, though. As the United States Supreme Court stated in *Jorn:*

"The defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial." 400 US at 485; 91 S Ct at 557; 27 L Ed 2d at 556.

The result which we reach here does not remove all discretion from the trial court to declare a mistrial on its own motion in cases other than those involving breakdowns in judicial machinery. Rather, it only seeks to insure that defendant will have an opportunity to inform the court of factors which are germane to his interests in the trial's continuation. The applicability of a statement by the California Supreme Court in *Curry* v *Superior Court of the City and County of San Francisco,* 2 Cal 3d 707, 717; 87 Cal Rptr 361, 367; 470 P2d 345, 351 (1970), is particularly relevant to the facts of this case.

"A defendant may choose not to move for or consent to a mistrial for many reasons. * * *

"Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety * * * . These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice in the name of a paternalistic concern for his welfare."

See, also, *State* v *Connors,* 59 Wash 2d 879; 371 P2d 541, 545 (1962).

The trial court's failure to consult defendant before declaring a mistrial on its own motion necessities reversal in this case.

The trial court's denial of defendant's motion to dismiss the first-degree murder information is reversed and defendant is discharged.

Reversed and defendant is ordered discharged. All concurred.