**UNITED STATES of America ex rel. James Nick PEETROS, H–9436**

v.

**Alfred T. RUNDLE, Superintendent.**

**Civ. A. No. 71–1639.**

United States District Court, E. D. Pennsyslvania.

April 28, 1972.

**56**

Donald J. Goldberg, Philadelphia, Pa., for petitioner.

Milton O. Moss, Dist. Atty., Montgomery County, Stewart J. Greenleaf, Asst. Dist. Atty., Willow Grove, Pa., for respondent.

## MEMORANDUM AND ORDER

EDWARD R. BECKER, District Judge.

This is a petition for writ of habeas corpus. Relator, James Nick Peetros, is presently incarcerated at the State Correctional Institution at Graterford, Pa., serving a sentence of not less than fifteen, nor more than thirty years imposed by the Court of Common Pleas of Montgomery County after trial by jury in June 1970. Peetros was convicted of participating in an armed robbery of a home in Jenkintown, Pa. on April 2, 1964, during which the occupants of the house were bound and gagged and the premises successfully ransacked for a substantial quantity of jewelry and other items of value. These proceedings emanate from relator's third trial.[1] He has exhausted his available state remedies.[2]

■ The central issue before us is whether it was consistent with the former jeopardy prohibition of the Fifth Amendment for the Commonwealth to retry relator for the third time, in view of the fact that, at the second trial, the judge declared a mistrial and dismissed the jury while the defendant was absent from the courtroom and was not consulted about the declaration.[3] We turn to a recitation of those facts which in due course will lead us to the conclusion that, in the circumstances of this case, the Commonwealth was not barred from reprosecution by the former jeopardy rule.[4]

### I.

On September 24, 1969, relator's second trial was nearing a conclusion. The

---

1. Peetros was indicted in April 1964. He was tried by a jury in January 1965 and was convicted and sentenced to imprisonment for a term of not less than fifteen, nor more than thirty years. This conviction was reversed by the Pennsylvania Superior Court on the ground that relator was denied assistance of counsel by the order of the trial judge forbidding him to discuss his testimony with his attorney during a fifteen hour recess that occurred while relator was undergoing cross examination. Commonwealth v. Peetros, 206 Pa.Super. 503, 214 A.2d 279 (1965). Relator's second trial commenced on September 22, 1969. The events of that trial constitute the basis of the former jeopardy claim before us and are recounted in the text.

2. Peetros appealed the conviction which is before us to the Superior Court of Pennsylvania as of October Term 1970 Nos. 1137–1139. The Superior Court affirmed the judgment of sentence per curiam without opinion on November 5, 1970. Relator unsuccessfully petitioned the Supreme Court of Pennsylvania for allowance of Appeal (denied on February 3, 1971), and that court also denied relator's petition to reconsider on April 5, 1971.

3. The "double jeopardy" provision of the Fifth Amendment was made applicable to the states through the Fourteenth Amendment in Benton v. Maryland, 395 U.S. 784, 787, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). We note that the terms "double jeopardy" and "former jeopardy" mean the same thing and are used interchangeably by the courts.

4. There is no dispute between the parties as to the facts.

court had provided for a view of the scene of the crime for the morning of September 25, 1969. It was arranged that relator, who was free on bail at the time, should go to the scene by himself and there meet the court, counsel and the jury who were to be bused together from the Courthouse. On the evening of September 24, 1969, newspaper accounts of relator's prior conviction and sentence and the grant of a new trial appeared in the Norristown Times Herald and the Philadelphia Evening Bulletin.[5] *Inter alia*, the newspaper accounts recited that relator had been convicted of the robbery in 1965 and was sentenced to serve from fifteen to thirty years in the State Penitentiary. On the morning of September 25, the judge, instead of proceeding to the crime scene as planned, convened court and questioned the jurors individually to determine whether they had read the articles. Only relator was absent; during the course of these proceedings he was at the Bonwit Teller parking lot, nearby the scene of the view, awaiting the arrival of his attorney (who was to meet him there), following which the two would proceed to the scene and meet the court and jury. Relator therefore was unavailable by telephone. Counsel for both relator and the Commonwealth agreed to pursue the matter despite relator's absence.[6]

The judge then interrogated four jurors individually; three admitted to having read the articles but denied that they would affect their ability to impartially decide the case; one juror denied seeing the articles. The court then inquired if there were any motions. Defense counsel moved for a mistrial. The Commonwealth objected, but the judge declared a mistrial.

After relator's third trial (and conviction) he moved for a new trial, arrest of judgment and for discharge on the ground of former jeopardy. His motions were argued before a court en banc, were denied, and relator was once again sentenced to imprisonment for a term of not less than fifteen nor more than thirty years. As we have noted above, relator has exhausted his state remedies; while pursuing them he has consistently (and unsuccessfully) asserted the former jeopardy claim.

## II.

The gravamen of relator's claim is that his absence from the courtroom during the mistrial proceedings and his subsequent reprosecution violated the Fifth Amendment prohibition against former jeopardy.[7] The theory behind the Fifth Amendment bar against retrial was succinctly set out by the Supreme Court in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), where the Court stated:

"The State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby

---

5. Norristown is the county seat of Montgomery County and site of the courthouse. Montgomery County, as a whole, is within the metropolitan Philadelphia area throughout which the Philadelphia Evening Bulletin is circulated.

6. The trial judge was aware of the seriousness of the matter facing the court and of its importance to the relator, as shown by the judge's comments to counsel:
   "THE COURT: We are well aware of the fact that the defendant is entitled to be present at all critical stages of the trial, but under the circumstances I can't see the wisdom or merit of holding everything up for probably the balance of the morning until we could get Mr. Peetros back here, because, as I

understand it, you directed him to meet you at a parking lot?

. . . . .

THE COURT: Although I prefer that he be here I just can't imagine that anybody could say that it is improper for us to pursue the matter at hand in the absence of the defendant under the circumstances we have just stated, and both you attorneys agree that it seems to be the only feasible thing to do, do you not?"

7. *Inter alia*, the Fifth Amendment of the United States Constitution provides, that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."

subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

The prohibition is not against being twice punished, but rather against being twice placed in jeopardy. United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).

Relator contends that one of the most basic rights afforded an accused is the right "to be present in the courtroom at every stage of his trial", Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L. Ed.2d 353 (1970); Bustamante v. Eyman, 456 F.2d 269 (9th Cir. 1972), and that, in his absence, he lost the valued right to have his trial completed by the particular tribunal summoned to sit in judgment of him. Downum v. United States, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Reprosecution after the mistrial declaration made in his absence, relator contends, violates his Fifth Amendment rights. We note at the outset of our discussion of former jeopardy that the Supreme Court has consistently declined to formulate rules based on "categories of circumstances" permitting or barring reprosecution in mistrial situations.

The United States Supreme Court long ago fashioned the standard to be used by the courts when determining whether reprosecution was barred by a plea of former jeopardy. In United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824), the Supreme Court was asked to decide whether in a capital case reprosecution was barred when the judge declared a mistrial without the consent of the prisoner where a jury was unable to agree. The Court held that under the facts, there was no bar to a future trial since the defendant had neither been convicted nor acquitted. Mr. Justice Story announced the elastic rule by which all such cases were to be measured:

> "We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes . . . "

*Perez* thus establishes that to be twice tried for the same offense is not necessarily "to be twice put in jeopardy of life or limb." Nonetheless, there are instances where retrial is clearly barred.

In Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1960), the Supreme Court adopted a variation of the *Perez* standard. Gori was tried on charges of knowingly receiving and possessing goods stolen in interstate commerce. During direct examination of the government's fourth witness, the trial judge declared a mistrial sua sponte and with neither approval nor objection by the defendant's counsel. It was unclear precisely what caused the trial judge to take this action though counsel felt (fn. 7) that the judge intended to prevent the prosecutor from bringing out evidence of other crimes by the accused. Gori was tried again and convicted. The Court of Appeals affirmed the conviction expressing the opinion that the trial judge "was acting according to his convictions in protecting the rights of the accused." 282 F.2d 43 at 46. Justice Frankfurter found the trial judge's action to be based on "overeager solicitude . . . in favor of the accused." Nonetheless, Justice Frankfurter, speaking for the majority, held the case to fall within the dictates of *Perez*, "the authoritative starting point of our law in this field", and affirmed the conviction. The Court emphasized the rule of discretion in the trial judge in this area and the Court's reluctance

to scrutinize the exercise of that discretion:

"Suffice that we are unwilling, where it clearly appears that a mistrial has been granted in the sole interest of the defendant, to hold that its necessary consequence is to bar all retrial." *Id.* at 369, 81 S.Ct. at 1527.

The ramifications of this decision and of the *Perez* standard in general, were reexamined in United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). *Jorn* involved a prosecution for wilful assistance in the preparation of fraudulent income tax returns. The government called as a witness a taxpayer whom Jorn had allegedly aided in preparing his return. At defense counsel's suggestion, the trial judge advised the witness of his constitutional rights. The witness stated that he had been warned of his rights by the IRS and expressed a willingness to testify. The judge, however, refused to permit him to testify until he had consulted a lawyer and indicated that he did not believe the witness had been warned of his rights by the IRS. The prosecutor told the judge that the other witnesses had also been advised of their rights by the IRS. The judge stated that the warnings were probably inadequate and discharged the jury without the defendant's consent so that the witnesses could consult with attorneys. The case was then set for retrial before another jury, but on Jorn's pre-trial motion the judge dismissed on the ground of former jeopardy. The Supreme Court affirmed.

In rejecting the government's contention that reprosecution should be permitted here even if the trial judge abused his discretion because the ruling "benefited" the defendant and was not based on bad faith prosecutorial conduct, the Court stated:

"Further, we think that a limitation on the abuse-of-discretion principle based on an appellate court's assessment of which side benefited from the mistrial ruling does not adequately satisfy the policies underpinning the double jeopardy provision. Reprose-

cution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action." *Id.* at 483, 91 S.Ct. at 556.

The government also contended that reprosecution should be barred only in cases of prosecutorial or judicial overreaching. Justice Harlan, speaking for the majority, responded to this argument by summarizing and distilling the critical factors involved in making a mistrial determination:

"[T]he crucial difference between reprosecution after appeal by the defendant and reprosecution after a *sua sponte* judicial mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal. On the other hand, where the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.' See Wade v. Hunter, 336 U.S. [684] at 689, 69 S.Ct. [834], at 837 [93 L.Ed. 974].

If that right to go to a particular tribunal is valued, it is because, independent of the threat of bad faith conduct by judge or prosecutor, the defendant has a significant interest in the decision whether or not to take the case from the jury when circumstances occur which might be thought to warrant a declaration of mistrial. Thus, where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error. In the absence of such a motion, the *Perez* doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous ex-

**60**

ercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." (footnotes omitted). *Id.* at 484–485, 91 S. Ct. at 557.

■ For our purposes, *Jorn* teaches that in the absence of a motion by the defendant for a mistrial, the trial judge should not foreclose a defendant's option to proceed to the jury without a "scrupulous exercise of judicial discretion," in determining whether a "manifest necessity" warrants a mistrial declaration. While relator asserts that *Jorn* overrules *Gori* [8], we do not view the court's holding that way; rather we view *Jorn* as a continuing exegesis of *Perez*. For that reason, we do not reach the question of the retroactivity of *Jorn*.[9]

The Michigan Court of Appeals recently probed the meaning of *Jorn*. In People v. Gardner, 37 Mich.App. 520, 195 N.W.2d 62 (1972), the defendant appealed the denial of his motion to dismiss the information charging him with murder. The jury in his first trial was deadlocked. On the tenth day of the second trial, the judge declared a mistrial following a prosecutor's question as to whether or not the defendant was in the custody of a parole or probation officer when he turned himself in. The judge was apparently concerned that the jury's knowledge that Gardner was on parole or probation or in custody for another conviction might have a prejudicial effect on their judgment. The Michigan court concluded that even though the judge declared a mistrial out of a concern for a fair trial for the defendant, that did not satisfy the "manifest necessity" test reemphasized in *Jorn*. The court considered that defendant might have revealed this information himself (he had at his former trial). It also considered that he might have been satisfied with his jury and so would prefer a curative instruction to correct any er-

ror or might have indicated his approval of the mistrial declaration. The court concluded that, under the circumstances of that case, the trial court's declaration sua sponte of a mistrial did not satisfy *Jorn*.

### III.

■■ *Jorn* and the cases construing it strongly underline the limited circumstances in which a judge may declare a mistrial. In the absence of a motion by the defendant or a breakdown in the judicial machinery, these circumstances must amount to a situation where there is a "manifest necessity for the act, or the ends of public justice would otherwise be defeated." We hold that the circumstances of the present case meet this test. The uncontradicted facts of record reveal that at least three jurors had read articles which stated that relator had previously been convicted by a jury for the robbery in question and had been sentenced for a period of not less than fifteen years nor more than thirty. It is difficult for us to conceive how a jury could fairly adjudicate the case in the face of the knowledge that another jury had convicted relator on these same facts, and that a judge had deemed the offense so serious that he sentenced relator to a fifteen to thirty year term. So obvious is the strong probability of prejudice that even had relator been present and demanded to proceed with the trial, we do not believe that any trial judge would have acceded to such a request. We view these facts as constituting manifest necessity. We further believe that the ends of public justice would have been disserved by a continuation of the proceedings. Accordingly, the *Perez* and *Jorn* standards are met.

■ The facts here are quite different than those of the *Gardner* case. There, all the jury would have known was that Gardner had a criminal record. This could have been cured by appropri-

---

**8.** Judge Woodring relied on *Gori, supra,* in holding that the mistrial declaration was made in the "sole interest of the defendant" Peetros.

**9.** Relator's third trial occurred prior to the Supreme Court's decision in *Jorn, supra.*

ate instructions. To repeat: it is a far more serious matter for the jury to know that another jury, when confronted with the identical facts, found the relator guilty. Curative instructions could not have overcome the prejudicial effect of such knowledge. To be sure, it might have been preferable for the judge in this case to have awaited the return of the relator before proceeding; yet, the motion was made by the relator's counsel in his absence. At most, we view this as harmless error.

In view of the foregoing discussion, we deny relator's petition without hearing.[10]

10. After a careful review of the full and complete record of the state court proceedings, we do not feel that an evidentiary hearing was necessary. *See* Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). All relevant and necessary facts for our determination are manifest in the state court record. Moreover, these facts are undisputed.